1 | CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW, State Bar No. 194668
2 |   *burrow@caldwell-leslie.com*
KELLY L. PERIGOE, State Bar No. 268872
3 |   *perigoe@caldwell-leslie.com*
725 South Figueroa Street, 31st Floor
4 | Los Angeles, California 90017-5524
Telephone: (213) 629-9040
5 | Facsimile: (213) 629-9022

6 | Attorneys for TWENTIETH CENTURY
FOX FILM CORPORATION; LEE
7 | DANIELS; DANNY STRONG;
TERRENCE HOWARD; AND
8 | MALCOLM SPELLMAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| RON NEWT, | Case No. 2:15-CV-2778-CBM-JPR |
|---|---|
|        Plaintiff, | **NOTICE OF MOTION AND MOTION OF LEE DANIELS, DANNY STRONG, TERRENCE HOWARD, AND MALCOLM SPELLMAN TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |
|        v. | |
| TWENTIETH CENTURY FOX FILM CORPORATION; LEE DANIELS; DANNY STRONG; TERRENCE HOWARD; MALCOLM SPELLMAN, and DOES 1-10, inclusive, | |
|        Defendants. | |
| | **[[Proposed] Order; Declaration of Kelly L. Perigoe; Request for Judicial Notice and [Proposed] Order filed concurrently herewith]** |
| | The Honorable Consuelo B. Marshall |
| | Date:      November 24, 2015
Time:     10:00 a.m.
Courtroom: 2 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 24, 2015 at 10:00 a.m. or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Consuelo B. Marshall, located in the United States Courthouse, 312 N. Spring Street, Courtroom 2, Los Angeles, CA 90012, Defendants Lee Daniels, Danny Strong, Terrence Howard, and Malcolm Spellman (collectively, "Defendants") will and hereby do move this Court to dismiss Plaintiff's First Amended Complaint ("FAC") with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the following grounds:

- Plaintiff's first cause of action for copyright infringement fails because, as a matter of law, the works at issue are not substantially similar to Defendants' television series in a manner protected by copyright law. Plaintiff's claim for copyright infringement based on his screenplay and DVD fails for the additional reason that the copyright application attached to the FAC is defective as a matter of law.

- Plaintiff's second cause of action for breach of implied contract fails as to Defendants Daniels, Strong, and Spellman because Plaintiff fails to plead facts showing that Defendants Daniels, Strong, or Spellman had or could have had contractual privity with Plaintiff, and fails as to all Defendants because Plaintiff fails to allege that *any* Defendant actually used the works.

- Because the defects in Plaintiff's FAC cannot be cured by amendment of the FAC, the FAC should be dismissed with prejudice.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Kelly L. Perigoe and Request for Judicial Notice and exhibits thereto filed concurrently herewith, all of the pleadings and other documents on file in this case, all other matters of which the

CALDWELL
LESLIE &
PROCTOR

-1-

1  Court may take judicial notice, and any further argument or evidence that may be
2  received by the Court at the hearing.
3       Pursuant to Local Rule 7-3, counsel for Defendant called counsel for Plaintiff
4  to meet and confer regarding this Motion on October 6, 2015, and at the request of
5  Plaintiff's counsel, followed up by email setting forth the grounds for this Motion.
6  The parties discussed the issues presented in this Motion by telephone on October 8,
7  2015, but were unable to resolve them.  *See* Declaration of Kelly L. Perigoe, ¶ 2.

9  DATED:  October 15, 2015          CALDWELL LESLIE & PROCTOR, PC
10                                   LINDA M. BURROW
                                     KELLY L. PERIGOE

13                                   By  _____/s/_____
14                                        LINDA M. BURROW
                                     Attorneys for TWENTIETH CENTURY FOX
15                                   FILM CORPORATION; LEE DANIELS;
                                     DANNY STRONG; TERRENCE HOWARD;
16                                   AND MALCOLM SPELLMAN

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.   INTRODUCTION .............................................................................. 1

II.  FACTUAL BACKGROUND ............................................................ 3

    A.   Plaintiff's Works ...................................................................... 3

    B.   The Empire Television Series .................................................. 7

    C.   Plaintiff's Allegations Regarding Disclosure of the Works to Howard ..................................................................................... 8

    D.   Plaintiff's Action ...................................................................... 9

III. LEGAL STANDARD FOR RULE 12(b)(6) MOTION ................... 9

IV.  THE FAC SHOULD BE DISMISSED WITH PREJUDICE ......... 10

    A.   Plaintiff Cannot State a Claim for Copyright Infringement ..... 10

        1.   *Empire* Is Not Substantially Similar to Plaintiff's Works ..... 11

            (a)   Plot and Sequence of Events ......................... 12

                (i)   Plaintiff Mischaracterizes *Empire* and His Works ............................... 12

                (ii)  Plaintiff Identifies No *Protectable* Similarities ...................................... 13

            (b)   Characters ...................................................... 14

                (i)   Lucious Lyon and Plaintiff ................. 15

                (ii)  Cookie Lyon and China Doll ................ 16

                (iii) The Sons ........................................... 17

            (c)   Dialogue ........................................................ 18

            (d)   Mood.............................................................. 18

            (e)   Theme ............................................................ 19

            (f)   Pace ............................................................... 20

            (g)   Setting............................................................ 20

         2.   The Application to Register the DVD & Screenplay Is Invalid ............................................................. 21

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

     B.    Plaintiff Cannot State a Claim for Breach of Implied Contract............22

         1.    Plaintiff Fails to Allege a Contract with Defendants Daniels, Strong, and Spellman ....................................................22

         2.    Plaintiff Does Not and Cannot Allege Use.................................24

             (a)    Plaintiff Fails to Allege Use by Defendants....................24

             (b)    The Ideas in the Works are Not Similar...........................24

     C.    Leave to Amend Would Be Futile ........................................................25

V.    CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Althouse v. Warner Bros. Entm't*,
   No. CV 13-00696, 2014 WL 2986939 (C.D. Cal. Apr. 28, 2014)......................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................2, 9

*Benay v. Warner Bros. Entm't, Inc.*,
   607 F.3d 620 (9th Cir. 2010).................................................................*passim*

*Benjamin v. Walt Disney Co.*,
   No. CV 05-2280GPS, 2007 WL 1655783 (C.D. Cal. June 5, 2007) .............15, 20

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ...................................................................13

*Bernal v. Paradigm Talent & Literary. Agency*,
   788 F.Supp.2d 1061 (C.D. Cal. 2010).........................................................13

*Campbell v. Walt Disney Co.*,
   718 F.Supp.2d 1108 (N.D. Cal. 2010)...............................................19, 20, 21, 25

*Capcom Co., Ltd. v. MKR Grp., Inc.*,
   No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008)..........17, 18, 20

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) .................................................................11, 14, 19

*Chase-Riboud v. Dreamworks, Inc.*,
   987 F.Supp. 1222 (C.D. Cal. 1997)...........................................................11

*Christianson v. West Publ'g Co.*,
   149 F.2d 202 (9th Cir. 1945) ....................................................................10

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*,
   606 F.3d 612 (9th Cir. 2010) ....................................................................21

*Desny v. Wilder*,
   46 Cal.2d 715 (1956)........................................................................22, 23, 24

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

*Feldman v. Twentieth Century Fox Film Co.*,
    723 F.Supp.2d 357 (D. Mass. 2010) ................................................... 14

*Firoozye v. Earthlink Network*,
    153 F.Supp.2d 1115 (N.D. Cal. 2001) ................................................ 23

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
    462 F.3d 1072 (9th Cir. 2006) ............................................. 11, 14, 15

*Gadh v. Spiegel*,
    No. CV 14-855 JFW, 2014 WL 1778950 (C.D. Cal. Apr. 2, 2014) ............... 3, 25

*Gerritsen v. Warner Bros. Entm't Inc.*,
    ---F.Supp.3d---, No. CV 14-03305 MMM, 2015 WL 4069617
    (C.D. Cal. Jan. 30, 2015) ................................................................ 23

*Green v. Schwarzenegger*,
    No. CV 93-5893-WMB, 1995 WL 874191 (C.D. Cal. July 12,
    1995), *aff'd*, 107 F.3d 877 (9th Cir. 1997) ...................................... 24-25

*Grosso v. Miramax Film Corp.*,
    383 F.3d 965 (9th Cir. 2004) ............................................................ 22

*Idema v. Dreamworks, Inc.*,
    162 F.Supp.2d 1129 (C.D. Cal. 2001) ................................................ 17

*Klekas v. EMI Films, Inc.*,
    150 Cal.App.3d 1102 (1984) ................................................. 2, 24, 25

*Kouf v. Walt Disney Pictures & Television*,
    16 F.3d 1042 (9th Cir. 1994) ............................................................ 11

*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984) .......................................................... 13

*Montz v. Pilgrim Film & Television, Inc.*,
    649 F.3d 975 (9th Cir. 2011) ............................................................ 23

*Narell v. Freeman*,
    872 F.2d 907 (9th Cir. 1989) ............................................................ 11

*Olander Enters., Inc. v. Spencer Gifts, LLC*,
    812 F.Supp.2d 1070 (C.D. Cal. 2011) .................................... 2, 21, 22

CALDWELL
LESLIE &
PROCTOR

*Olson v. National Broad. Co., Inc.*,
   855 F.2d 1446 (9th Cir. 1988) ................................................................ 14, 15, 18

*Quirk v. Sony Pictures Entm't Inc.*,
   No. C 11-3773 RS, 2013 WL 1345075 (N.D. Cal. Apr. 2, 2013) ........................ 24

*Reece v. Island Treasures Art Gallery, Inc.*,
   468 F.Supp.2d 1197 (D. Haw. 2006) ........................................................ 16, 18

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) ................................................................................ 21, 22

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) ........................................................................ 15

*Rokos v. Peck*,
   182 Cal.App.3d 604 (1986) ............................................................................. 23

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ............................................................. 11, 13, 20

*Shame on You Prods., Inc. v. Banks*,
   No. CV-14-03512-MMM, 2015 WL 4885221
   (C.D. Cal. Aug. 14, 2015) ....................................................................*passim*

*Smith v. Jackson*,
   84 F.3d 1213 (9th Cir. 1996) ........................................................................... 13

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ........................................................................... 3

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ........................................................................... 10

*In re Toyota Motor Corp.*,
   785 F.Supp.2d 883 (C.D. Cal. 2011) ............................................................... 23

*UMG Recordings, Inc. v. Augusto*,
   628 F.3d 1175 (9th Cir. 2011) ......................................................................... 10

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ........................................................................... 10

*Ware v. Columbia Broad. Sys., Inc.*,
   253 Cal.App.2d 489 (1967) ............................................................................. 25

*Wild v. NBC Universal, Inc.*,
    788 F.Supp.2d 1083 (C.D. Cal. 2011) ................................................................ 2

*Willis v. Home Box Office*,
    No. 00 VIV 2500 (JSM), 2001 WL 1352916
    (S.D.N.Y. Nov. 2, 2001) ................................................................................19-20

*Winfield Collection Ltd. v. Gemmy Indus. Corp.*,
    311 F.Supp.2d 611 (E.D. Mich. 2004) .......................................................... 16

*Zella v. E.W. Scripps Co.*,
    529 F.Supp.2d 1124 (C.D. Cal. 2007) ...........................................2, 10, 11, 21

**Statutes**

17 U.S.C. § 102(b) ................................................................................................ 11

17 U.S.C. § 411(a) ................................................................................................ 21

17 U.S.C. § 501(a) ................................................................................................ 10

37 C.F.R. § 202.3(b)(4)(i)(A) ........................................................................... 21

Fed. Rule Civ. Proc. 12(b)(6) ........................................................................ 9, 10

CALDWELL
LESLIE &
PROCTOR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff, Ron Newt is a self-described "gangsta pimp" who claims to have created three works—a book, a screenplay, and a DVD documentary (the "Works")—"based" on his "life story" as a San Francisco-area pimp and drug dealer.  Plaintiff's Works include detailed descriptions of cold-blooded killings, dismemberments, and crude descriptions of Plaintiff's sexual escapades in graphic detail that would never be shown on network television, but they do not, as he claims, have a "core theme" of raising himself and his sons "from the ghetto and a life of crime into the world of the music industry."  ECF 24, ¶ 20(a).  Instead, Plaintiff's Works focus on his failure to escape his violent past and only briefly, *e.g.,* in the last quarter of Plaintiff's book, discuss Plaintiff's brief, unsuccessful, effort to break into the music business as manager of his sons' teen bubble gum pop trio, the Newtrons.  From the book's very first page, the reader knows that the Newtrons' music career ends quickly when one of Plaintiff's singer sons is killed.

Plaintiff claims that the hit Fox network television series *Empire* is substantially similar to his Works, and asserts claims for copyright infringement and breach of implied contract.  But, in contrast to Plaintiff's crudely written, violent, regretful autobiographical Works, Fox's *Empire* is a dialogue-rich, soap opera-styled family drama, a fictional account of a close-knit family and their music empire involving two equally powerful characters:  Lucious Lyon, a former drug dealer turned rapper and music mogul, and his ex-wife, Cookie, a music producer and singer (and former drug dealer), who battles Lucious for control of his music empire.  In a modern take on Shakespeare's *King Lear*, Lucious, upon learning he has a life-threatening illness, must choose one of his three adult sons to take over his company.  The sons, Hakeem, Jamal, and Andre, compete for their parents' love and business alliances.  Andre has an MBA from the Wharton School, while Hakeem

1   and Jamal are singers, with Hakeem singing mostly rap and hip-hop, and Jamal

2   singing mostly pop love songs.  Empire is a story of a family's soaring success.

3       Plaintiff's claims fail as a matter of law, and his First Amended Complaint

4   ("FAC") should be dismissed with prejudice for at least the following reasons:

5       *First*, Plaintiff's Works are not substantially similar in protectable expression

6   to *Empire*, which dooms his copyright claim.  *See Zella v. E.W. Scripps Co.*, 529

7   F.Supp.2d 1124, 1130-31 (C.D. Cal. 2007) (observing that "[f]or fifty years, courts

8   have . . . dismissed copyright claims that fail from the face of the complaint (and in

9   light of all matters properly considered on a motion to dismiss)").

10      *Second*, Plaintiff's claim for infringement of the screenplay and DVD fails

11  for the additional reason that the copyright application attached to the FAC is

12  defective, as it purports to register multiple works with different publication dates in

13  a single application.  *See Olander Enters., Inc. v. Spencer Gifts, LLC*, 812 F.Supp.2d

14  1070, 1076 (C.D. Cal. 2011) (multiple works can be registered in a single

15  application only if they are "first published together").

16      *Third*, Plaintiff's implied contract claim fails as to Defendants Daniels,

17  Strong, and Spellman because Plaintiff fails to allege privity of contract with any of

18  these three Defendants.  *See Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 634

19  (9th Cir. 2010) (privity "is a necessary element" of an implied contract claim).

20      *Fourth*, Plaintiff's implied contract claim fails for the additional reason that

21  Plaintiff fails to allege that *any* Defendant used his Works and fails to identify any

22  similarities between the ideas in his Works and *Empire*.  *See Klekas v. EMI Films,*

23  *Inc.*, 150 Cal.App.3d 1102, 1114-15 (1984) (rejecting implied contract claim where

24  the defendant's film was "substantially dissimilar" to the plaintiff's novel).

25      Plaintiff's FAC is devoid of facts sufficient to "'permit the court to infer more

26  than the mere possibility of misconduct,'" and should be dismissed.  *See Wild v.*

27  *NBC Universal, Inc.*, 788 F.Supp.2d 1083, 1097 (C.D. Cal. 2011) (quoting *Ashcroft*

28  *v. Iqbal*, 556 U.S. 662, 679 (2009)).  Moreover, because no amended pleading could

CALDWELL
LESLIE &
PROCTOR

1   create similarities between Plaintiff's Works and *Empire* where none exist,

2   permitting Plaintiff to amend "would be an exercise in futility," and Plaintiff's FAC

3   should be dismissed with prejudice and without leave to amend.  *See Gadh v.*

4   *Spiegel*, No. CV 14-855 JFW, 2014 WL 1778950, at *2 (C.D. Cal. Apr. 2, 2014).

5   **II.     FACTUAL BACKGROUND**[1]

6        ***A.     Plaintiff's Works***

7        Plaintiff claims that he created three works based on his life story:  (1) a book

8   entitled "Bigger Than Big" (the "Book"), (2) a motion picture screenplay entitled

9   "All That Glitters," also called "Bigger Than Big" (the "Screenplay"), and (3) a

10  DVD documentary entitled "Bigger Than Big:  A Documentary of a Gangsta Pimp

11  Ron Newt" (the "DVD") (collectively, the "Works").  ECF 24, ¶ 12.  According to

12  Plaintiff, the DVD and the Screenplay are based on the Book and the Screenplay is

13  the "script of" the Book.  *Id.*, ¶¶ 3, 12, Ex. 1.  Plaintiff alleges that he has applied for

14  copyright registration for all three Works, attaching to the FAC an application for

15  registration of the DVD and Screenplay.  *Id.*, ¶ 12, Ex. 1.  According to Copyright

16  Office records, only the Book has in fact been registered.  *See* RJN, Ex. A.

17       ***The Book***.  Plaintiff writes in his Book's Introduction that he is "candidly

18  laying out the story of [his] life . . . as a gangster-pimp" and drug dealer whose

19  various stints in prison are briefly interrupted by his failed attempt to break into the

20  music business as manager of his children's pop boy-band, the Newtrons.  RJN, Ex.

21  B, (page 1 of Intro). The Book is set in the San Francisco Bay Area, and, although it

22  focuses on Plaintiff's youth in the 1960s and 1970s, spans from Plaintiff's birth on

23  June 20, 1949, to the early 2000s.  *See generally id.*

24       The Book opens in 1988, with Plaintiff leaving a Newtrons concert to

25  _____

26  [1] For the purposes of this Motion, Defendants accept as true the factual allegations
    in the FAC, except those that are flatly contradicted by judicially noticeable facts.

27  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).  For
    the record, Defendants vehemently deny Plaintiff's factual allegations.

28

1  confront rival drug dealers.  *Id*. at 15-21.  Plaintiff shoots his rivals, is arrested and

2  put in prison, where he sees a news report that his son, 16-year-old Ron Jr., was

3  killed while robbing a convenience store during a Crips gang initiation.  *Id.* at 25-39.

4        The next chapter starts with Plaintiff's childhood.  *Id.* at 45.  Plaintiff is

5  abused by his mother's husband, and, in revenge, sets the house on fire.  *Id.* at 46-

6  51.  He is arrested at age 7 and sent to juvenile hall.  *Id.* at 55.  Upon release, he robs

7  a milkman and steals his stepfather's car, crashing it in a police chase.  *Id.* at 55-59.

8  Plaintiff is then imprisoned twice in California Youth Authority facilities: once after

9  a shootout and later after he shoots a man for insulting his cousins.  *Id.* at 59-62.

10        Plaintiff moves in with his sister and her husband, through whom he meets a

11  number of "gangster pimps" and decides to become a pimp himself.  *Id.* at 64-67.

12  He begins pimping in 1967, developing a profitable business with a "stable" of

13  many of the Bay Area's "top whores."  *Id.* at 79.

14        Plaintiff falls in love at age 17 with the 15-year-old "China Doll."  *Id.*,

15  102-05, 108.  China Doll and Plaintiff are arrested by undercover FBI agents for

16  selling heroin at their high school.  *Id.* at 107-16.  China Doll is released first and

17  takes care of Plaintiff's pimping business during his imprisonment.  *Id.* at 116-17.

18  When Plaintiff is released, he resumes his pimping business.  *Id.* at 119-22.

19        Plaintiff learns from China Doll that she was robbed, raped, and beaten while

20  Plaintiff was in custody.  *Id.* at 117-18, 123-24.  Plaintiff kills the men involved:  he

21  first sodomizes one of the men with the butt of his pistol before shooting him and

22  watching as an accomplice slits his throat; and he and his accomplice shoot the other

23  alleged rapist in both kneecaps, hogtie him to a chair, pour cement in a bucket

24  around his bound ankles, cut off his penis and put it in his mouth, and throw him off

25  the Golden Gate Bridge.  *Id.* at 124-41.

26        The Book describes in graphic detail numerous other violent acts, among

27  them:  Plaintiff shoots a bartender who had attempted to "shake down" one of his

28  prostitutes, *id.* at 80-82; one of Plaintiff's associates has his throat cut, his penis cut

off and put in his mouth, and is shot by a rival drug dealer, *id.*, 183-84; Plaintiff drives a U-Haul truck through the glass window of a restaurant, and kills everyone inside, *id.* at 184-85; and Plaintiff shoots someone in the penis and each knee cap, then puts the gun in his mouth and kills him. *Id.* at 190-91. Plaintiff himself is eventually injured when he is shot in the hand during a shootout. *Id.* at 199-204.

On page 209 of the 286-page Book, China Doll asks Plaintiff to leave the criminal world, and he starts managing his pre-teen and teenaged sons as a Jackson 5-like group called the Newtrons.[2] *Id.* at 205-06, 209-18. Plaintiff and his family become friendly with the Jackson family, and Joe Jackson signs the Newtrons to his label. *Id.* at 213-18. As the group is finishing its first album, however, Jackson refuses to release the album. *Id.* at 245-46. Plaintiff returns to pimping, is arrested for cocaine possession and later escapes from prison. *Id.* at 248-59.

The Newtrons sign with MCA Records. *Id.* at 263-70. Their video is aired on BET and they perform on Soul Train, but MCA will not pay for them to tour. *Id.* at 270-71. Plaintiff takes the group on tour, and is arrested for gun possession in Maryland. *Id.* at 272-73. Plaintiff returns to California and goes to MCA, where he is arrested. *Id.* at 275, 278-80. Plaintiff then serves six years in federal prison, where he learns about his son's 1991 death on television. *Id.* at 280-82. China Doll dies on June 14, 2005 for reasons unexplained in the Book, followed a year later by the deaths of Plaintiff's parents. *Id.* at 282. In all, less than a quarter of the entire Book is devoted to Plaintiff's so-called music "career."

***The DVD***. The DVD is a montage of still photographs, footage from home videos and television shows, and dramatizations. It contains occasional voice-over narration, which is barely audible, as well as superimposed text. *See, e.g.*, RJN, Ex.

---

[2] Plaintiff alleges that the Newtrons were made up of his *three* sons. ECF 24, ¶ 20(b). According to the DVD jacket, however, Plaintiff had 27 children, *four* of whom were in the Newtrons, and the Book never clarifies how many of his children were in the group. RJN, Exs. B-C.

C, 4:18-48, 35:39.  Like the Book, the DVD states it is autobiographical, titled "A Documentary of a Gangsta Pimp Ron Newt."  RJN, Ex. C, DVD jacket.  The DVD jacket also states that the documentary is "a journey into the deepest, darkest, most dangerous inner secret parts of the world" where the viewer "will meet some of the coldest & most notorious pimps, whores, drug dealers and killers the world has ever known."  *Id.*  Plaintiff describes himself as a "self made [sic] millionaire," with a gorgeous wife, 17 whores, and 27 beautiful children," who, in August 1989, "while managing an unknown group that consisted of four of his sons called the Newtrons . . . landed an $8 million record deal with MCA Records."  *Id.*

Plaintiff's life then "spiraled downward."  *Id.*  His son, Ron Newt Jr. was killed while robbing a grocery store in an attempt to complete his gang initiation.  *Id.*  As described on the DVD jacket, Plaintiff "was fascinated by the temptations of power and money.  The past had come back to haunt him and when the game was over it would prove to cost him much more than he ever anticipated."  *Id.*

The DVD opens with a summary of Plaintiff's birth and early childhood.  *Id.*, 4:00-6:00.  The overwhelming majority of the DVD is devoted to Plaintiff's successes and challenges as a pimp and drug dealer, *id.*, 6:00-41:30, including several minutes of footage of "Playa's Balls," award parties for Bay Area pimps.  *Id.*, 14:02-18:12, 20:13-21:10, 26:21-30:56.  The DVD also includes footage of Plaintiff's house, cars, and pet tiger, *id.*, 31:19, 35:19-37:46, and interviews with Plaintiff about the business of pimping.  *E.g.*, *id.*, 7:01-7:15, 7:54-8:13, 39:33-39:42.

Plaintiff's wife, China Doll, is only a peripheral character in the DVD.  After the opening credits, she is introduced into the story for the first time at the 41:30 minute mark, and has very little airtime, consisting primarily of photographs from prom or graduation or with her children as babies.  *Id.*, 41:30-43:38.  The Newtrons are not discussed in depth until more than 40 minutes into the 80-minute DVD, with just 25 minutes of Newtron performances and images of the Newt family with the Jackson family.  *Id.*, 43:49-1:08:30.  The DVD then shows footage from news

coverage of Ron Jr.'s shooting, *id.*, 1:08:33. Following the news show footage, there are another 10 minutes of footage from the early 2000s. *Id.*, 1:10:40-1:20:54.

   ***The Screenplay***. Plaintiff has refused to provide a copy of the Screenplay, and Defendants' request to the Copyright Office for the deposit copy is pending. Perigoe Decl., ¶ 5. However, because Plaintiff alleges that the Screenplay is the "script of the book," ECF 24, ¶ 3, Ex. 1, it follows that the Book contains the relevant elements of the Screenplay (e.g., plot, character, theme).

   ### B.    The **Empire** *Television Series*

   *Empire* is the story of rapper and music mogul, Lucious Lyon ("Lucious"), who has spent his life building Empire Entertainment ("Empire"), a privately held music empire on the verge of going public. RJN, Ex. D, Ep. 1, 4:50-6:42. When Lucious learns that he has Amyotrophic Lateral Sclerosis (ALS), he must decide which of his three adult sons will take over his entertainment empire. In a plot reminiscent of Shakespeare's *King Lear*, Lucious's three sons—Andre, a married businessman with bipolar disorder; Jamal, a gay singer rejected by the homophobic Lucious; and Hakeem, a talented but unfocused rapper—vie for control of Empire. *Id.*, Ep. 1, 6:43-8:05, 22:24-23:16, 34:36-35:26, 39:20-34; Ep. 10, 0:53-3:49. The reappearance of Lucious's ex-wife, Cookie, after serving 17 years on drug charges, complicates the story. *Id.*, Ep. 1, 8:06-37, 14:52-56. Cookie becomes the focus of the action as she demands half of the company she started with Lucious, and ultimately helps Jamal take control of Empire. *Id.*, Ep. 1, 15:25-41; Ep. 11, 46:58-47:24. Conflict also arises between the blunt-spoken Cookie and Lucious's fiancé, Anika, Empire's head of artists and repertoire (A&R). *Id.*, Ep. 1, 16:35-17:13, Ep. 6, 2:43-3:33.

   Although Lucious and Cookie were involved in drug dealing and related criminal activity before starting Empire, *Empire*'s pilot episode begins long after they have left the drug trade, and the briefly-shown shooting by Lucious is to silence a character with knowledge of his long-ago past. *Id.*, Ep. 1, 36:43-37:45, 41:24-

43:17.  *Empire* is set in the music industry and takes place in present day New York City, in a setting marked by imagery of over-the-top glamour.  The occasional flashbacks to Lucious's and Cookie's drug dealing provide backstory, but do not drive the plot.  *Id.*, Ep. 1, 39:49-40:47.  Instead, the focus is on the relationships among the web of family members and friends, and on the music, as each episode includes the performance of a at least two original pop and hip hop songs performed by the show's characters.  *E.g., id.*, Ep. 1, 3:20-4:38, 30:11-32:33.

In many ways, *Empire* is a contemporary take on *Dynasty,* a 1980s prime-time soap opera that focused on the family drama around a succession plan for a patriarch running an oil empire.  Though set in the music industry, *Empire*—like *Dynasty*—explores the relationships among a wealthy business-owning patriarch, his children, his current partner and his ex-wife (and children's mother) as the patriarch struggles with the decision over who will succeed him.  *Id.*, Ep. 12, 0:01-1:01.

*Empire* debuted on January 7, 2015, and airs during prime time on the Fox Broadcasting Company television network.  ECF 24, ¶ 15.  Season One consists of 12 episodes, each lasting between 44 and 47 minutes.  RJN, Ex. D.

### C.    *Plaintiff's Allegations Regarding Disclosure of the Works to Howard*

Plaintiff alleges that he met with Defendant Terrence Howard in November 2010 to "promote his Book/Screenplay/DVD" and "to discuss [the Works] and the possibility of jointly developing a motion picture adaptation of the [Works]."  ECF 24, ¶ 13.  Plaintiff alleges that, after Howard expressed interest in *playing* Plaintiff in a potential film, he gave his Works to Howard, who never returned them.  *Id*.  Plaintiff alleges that the Works were "presented to Howard with the clear understanding that if any element of the [Works] was to be used by Howard, he must first obtain rights to the [Works] in connection with appropriate compensation, and in accordance with entertainment industry custom and practice."  *Id.*, ¶ 14.

Based on his alleged contact with Howard, Plaintiff claims that "*Defendants* knew, or should have known, based on the parties' course of conduct including oral

1 representations creating a reasonable expectation, that the submission was

2 conditioned on Defendants' agreement" to compensate Plaintiff. *Id.*, ¶¶ 31, 35

3 (emphasis added).  Plaintiff does not, however, allege that he has ever met any

4 Defendant other than Howard, that Howard told him he had the power to bind any

5 other Defendant, or that Howard in fact had such power.  Nor does Plaintiff allege

6 that Howard had any role in creating *Empire*.  Instead, Plaintiff alleges only that

7 Howard is the *actor* who stars in *Empire* as Lucious Lyon.  *Id.*, ¶ 4.

8       **D.**    **Plaintiff's Action**

9       Plaintiff filed his Complaint in *pro per* on April 15, 2015.  ECF 1.  The Court

10 granted then-Defendant Fox Broadcasting Company's motion to dismiss without

11 prejudice and ordered Plaintiff to file any amended complaint by August 25, 2015.

12 ECF 23.  Represented by counsel, Plaintiff timely filed his FAC, naming Twentieth

13 Century Fox Film Corporation ("Fox") and four other Defendants:  Lee Daniels and

14 Danny Strong, *Empire's* co-creators and Executive Producers, ECF 24, ¶¶ 6, 7;

15 Terrence Howard, the actor who plays Lucious Lyon, *id.*, ¶ 4; and Malcolm

16 Spellman, a co-producer and writer on *Empire's* first season, *id.*, ¶ 8.  Fox answered

17 on September 8, 2015.  ECF 26.  Counsel for Defendants agreed to accept service

18 for the remaining Defendants and to a response date of October 15, 2015, which the

19 Court set in an October 1, 2015 order.  ECF 30, 31.

20 **III.**    **LEGAL STANDARD FOR RULE 12(b)(6) MOTION**

21       To survive a motion to dismiss under Federal Rule of Civil Procedure

22 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to

23 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting

24 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

25 plausibility when the plaintiff pleads factual content that allows the court to draw

26 the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

27 "[T]he tenet that a court must accept as true all of the allegations contained in a

28 complaint is inapplicable to legal conclusions."  *Id.*

CALDWELL
LESLIE &
PROCTOR

When deciding a Rule 12(b)(6) motion, the Court may also consider evidence on which the complaint "'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (citation omitted). Where, as here, the plaintiff's works and the allegedly infringing work "are referenced in—although not attached to—the amended complaint, they are incorporated by reference in it, and can be considered by the court in assessing substantial similarity." *Shame on You Prods., Inc. v. Banks*, No. CV-14-03512-MMM (JCx), 2015 WL 4885221, at *11 (C.D. Cal. Aug. 14, 2015).

## IV.   THE FAC SHOULD BE DISMISSED WITH PREJUDICE

### A.   *Plaintiff Cannot State a Claim for Copyright Infringement*

"To establish a prima facie case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act." *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011) (citation omitted); *see also* 17 U.S.C. § 501(a). "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work[3] and that the two works are 'substantially similar.'" *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (quoting *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996)).

"[W]hen the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945) (citing cases). The Court may dismiss a copyright

---

[3] For purposes of this motion only, Defendants do not challenge access.

1    infringement claim if it concludes that the works are not substantially similar in

2    protectable expression.  *See Zella*, 529 F.Supp.2d at 1130-31 (citing cases).

3            **1.    *Empire* Is Not Substantially Similar to Plaintiff's Works**

4            Copyright law protects the *expression* of ideas, not the ideas themselves, 17

5    U.S.C. § 102(b).  "'[C]opyright protection does not extend to historical or

6    contemporary facts, material traceable to common sources or in the public domains,

7    and *scenes a faire*.'"  *Chase-Riboud v. Dreamworks, Inc.*, 987 F.Supp. 1222, 1226

8    (C.D. Cal. 1997) (citation omitted); *see also Satava v. Lowry*, 323 F.3d 805, 810

9    (9th Cir. 2003) ("The originality requirement mandates that objective 'facts' and

10   ideas are not copyrightable.").

11           The Court "must take care to inquire only whether the protectable elements

12   [of the works at issue], standing alone, are substantially similar."  *Cavalier v.*

13   *Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (internal quotation marks,

14   citations, emphasis omitted); *see also Funky Films, Inc. v. Time Warner Entm't Co.,*

15   *L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (requiring the court to disregard non-

16   protectable elements in determining substantial similarity).  The substantial-

17   similarity test contains an extrinsic and intrinsic component, *Funky Films*, 462 F.3d

18   at 1077, but only the extrinsic test applies at the pleading stage.  *Zella*, 529

19   F.Supp.2d at 1133; *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045

20   (9th Cir. 1994) (citation omitted).  The extrinsic test "focuses on 'articulable

21   similarities between the plot, themes, dialogue, mood, setting, pace, characters, and

22   sequence of events' in two works."  *Funky Films*, 462 F.3d at 1077 (quoting *Kouf*,

23   16 F.3d at 1045).

24           Applying each factor of the extrinsic test in this case makes clear that there is

25   no substantial similarity between the protectable elements of *Empire* and Plaintiff's

26   Works.  Indeed, each of Plaintiff's claimed "similarities" consists of *ideas* and *facts*

27   from his "life story," or generic *scenes a faire*, none of which are protectable.

28

(a)   **Plot and Sequence of Events**

(i)   **Plaintiff Mischaracterizes *Empire* and His Works**

Plaintiff alleges that the plots of his Works and *Empire* both "follow[] an African American man, his wife who went to jail for dealing drugs to save her family, and their three sons who are engaged in pursuing careers in the music industry," and that both "*focus* in central part on the protagonist's history of violence and crime, drug dealing and pimping on the one hand and drug dealing on the other, the protagonist's struggle to maintain power in their world and achieve legitimacy and success in the music industry."   ECF 24, ¶ 20(b) (emphasis added).

Plaintiff mischaracterizes *Empire* in an effort to create similarities where none exist.  *Empire* is not about the characters' history of violence and crime or Lucious's *struggle* to achieve legitimacy and success in the music industry.  When they are introduced in the pilot, Lucious and Cookie have long ago left the drug trade, and Lucious is already at the top of the industry.  Instead, *Empire* is about a drug dealer-turned-rapper-turned-music mogul, who, believing he has a terminal illness, seeks a successor from among his three sons, while battling with the women in his life.

Neither is there any similarity between the storylines of the Newtrons' pursuit of musical careers in Plaintiff's Works and Jamal's and Hakim's musical careers in *Empire*.  Unlike the Newtrons, Jamal and Hakim have successful solo careers, which are central to each *Empire* episode.  The Newtrons, on the other hand, performed only as a group, never achieve success, and are, at most, a secondary story line in Plaintiff's Works.  They appear in less than a third of the DVD, and do not appear in the Book at all until Chapter 17 of 20.  RJN, Ex. C, 43:49-1:08:30, Ex. B at 209-22.  Even then, only one chapter—"The Beginning and the End of the Newtrons"—is devoted to the group itself, RJN, Ex. B at 209-22, as opposed to the Newt family's relationship to the Jackson family, *id.* at 223-50 ("The Newtrons Meet Michael Jackson"), or Plaintiff's efforts to secure a recording deal.  *Id.* at 259-83.  From the first page of the Book's Introduction, the reader knows that the

1  Newtrons' career was cut short by the death of 16-year-old Ron Newt Jr. and there

2  will be no long-running plot centered on the Newt family music empire.

3                    **(ii)    Plaintiff Identifies No *Protectable* Similarities**

4        "General plot ideas," such as those Plaintiff identifies, are not protected by

5  copyright law; they remain forever the common property of artistic mankind."

6  *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  Moreover, the Court must

7  "look[] beyond the vague, abstracted idea of a general plot" when assessing

8  substantial similarity.  *Id.*

9        The FAC includes a list of purported similarities between Plaintiff's Works

10  and *Empire*.  *See* ECF 24, ¶ 20.  The Ninth Circuit, however, "is 'particularly

11  cautious'" in finding infringement based on a list of random similarities scattered

12  throughout the works.  *See Shame on You*, 2015 WL 4885221, at *16 (*quoting

13  Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984); *Bernal v. Paradigm

14  Talent & Literary. Agency*, 788 F.Supp.2d 1061, 1063 (C.D. Cal. 2010) (rejecting "a

15  133-page chart indicating a side-by-side comparison of certain events, dialogue, and

16  characters").  Plaintiff's list of "similarities" is particularly suspect because he lists

17  the events in both the Works and *Empire* out of order, all but conceding "that the

18  two stories do not have a similar sequence of events," *Bernal*, 788 F.Supp.2d at

19  1072, and because each purported "similarity" is, according to Plaintiff, a

20  biographical *fact*, and is thus not protectable.  *See Satava*, 323 F.3d at 810

21  ("objective 'facts' and ideas are not copyrightable").

22        Each of Plaintiff's so-called "similarities" consists either of a general idea or

23  the "situations and incidents that flow naturally from a basic plot premise, so called

24  scenes a faire," none of which are protectable.  *See Berkic*, 761 F.2d at 1293.  A

25  character killing his best friend, ECF 24, ¶ 20(28), killing four drug dealers, *id.*,

26  ¶ 20(27), being questioned by police, *id.*, ¶ 20(34), or breaking out of jail, *id.*,

27  ¶ 20(40), are classic examples of "general plot ideas" that "flow naturally from a

28  basic plot premise," of characters involved in selling drugs, which cannot sustain a

copyright infringement claim. *See Berkic*, 761 F.2d at 1293. The same is true of a
character grooming his sons for show business, ECF 24, ¶ 20(24), or writing songs
for and making music with his son(s), *id.*, ¶ 20(25), (31), which flow directly from
the idea of a father and sons involved in the music industry. *See Cavalier*, 297 F.3d
at 823 ("Scenes-a-faire, or situations and incidents that flow necessarily or naturally
from a basic plot premise, cannot sustain a finding of infringement.").

Indeed, courts in the Ninth Circuit have found plots with far more similarities
to be *dissimilar* as a matter of law. *See, e.g.*, *Benay*, 607 F.3d at 625 (no substantial
similarity between works about American war veterans who traveled to Japan to
train the Japanese army to combat a samurai uprising); *Funky Films*, 462 F.3d at
1081 (no substantial similarity between works where fathers who operate family-run
funeral homes die, resulting in the subsequent operation of the homes by two sons,
one of whom has been estranged from the family prior to the father's death); *Shame
on You*, 2015 WL 4885221, at **16-17 (no substantial similarity between works
where female main character breaks up with boyfriend, gets intoxicated and has
one-night stand, wakes up disoriented the next morning and, due to various
difficulties including losing her cell phone and wallet, has a hard time finding her
way home). Plaintiff's Works are far *less* similar to *Empire* than any of the works at
issue in these cases, and thus his list of purported similarities notwithstanding,
Plaintiff cannot sustain his infringement claim here.

### (b)   Characters

Only characters that are "especially distinctive" are protected by copyright
law. *Olson v. National Broad. Co., Inc.*, 855 F.2d 1446, 1452 (9th Cir. 1988) (citing
cartoon characters as an example of a distinctive, copyrightable character); *Feldman
v. Twentieth Century Fox Film Co.*, 723 F.Supp.2d 357, 367 (D. Mass. 2010)
("copyright protection does not extend to stock characters, such as a blond, blue-
eyed hero or doctors in 'hot and cold' romances"). Characters with "traits that flow
naturally from the works' shared premises" cannot serve as a basis for infringement.

1   *Benay*, 607 F.3d at 626 (citing *Olson*, 855 F.2d at 1451-53).[4]  As described below,

2   Plaintiff identifies no protectable similarities between any of the specific characters

3   in *Empire* and Plaintiff's Works.

4   <strong>(i)      Lucious Lyon and Plaintiff</strong>

5           While Plaintiff claims that the lead character in both his Works and *Empire* is

6   "a charismatic African American man, in his forties, who has risen from the ghetto

7   and a life of drug dealing and/or pimping that included multiple violent acts of

8   murder to tackle the world of the hip hop music industry as producers and through

9   the talents of their three sons," ECF 24, ¶ 20(d), such characteristics (even if

10  accurate), are too generic and common to be protectable.  *See, e.g., Benjamin v.*

11  *Walt Disney Co.*, No. CV 05-2280GPS, 2007 WL 1655783, at *6 (C.D. Cal. June 5,

12  2007) (rejecting infringement claim where both works featured "attractive, likable,

13  30-year-old females that have escaped their humble past to pursue their dreams of

14  working and living in the big city"); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1176

15  (9th Cir. 2003) (finding "shared attributes of appearance and mysterious demeanor"

16  between magician characters to be "generic and common").

17          The absence of similarity is even more pronounced when the characters of

18  Plaintiff and Lucious are accurately described.  Lucious is a *former* drug dealer (and

19  never a pimp), who became a major rap star and then created his own record label

20  and entertainment company.  Lucious did not achieve legitimacy *through* the talents

21  of his three sons—when the audience first meets Lucious, he is already an

22  established entertainment mogul with a number of successful artists, only two of

23  whom are his sons.  Plaintiff, on the other hand, remains a pimp and drug dealer

---

25  [4] The presence of characters in each work that do *not* appear in the other also weighs

26  in favor of finding that the works are not substantially similar.  *See Funky Films*,

    462 F.3d at 1078-79.  There are numerous characters in *Empire* without (alleged or

27  actual) counterparts in Plaintiff's Works, and aside from Lucious, Cookie, and their

28  sons, Plaintiff does not allege that Defendants copied any characters in his Works.

throughout his story, with only a temporary—and unsuccessful—attempt to break into the music business, not as an executive, but as a manager for the Newtrons.

Nor can Plaintiff support his claim based on alleged similarities in the characters' clothing and hairstyles.  ECF 24, ¶ 20.  Such similarities flow from the factual, well-documented fashions of drug dealing and hip hop and thus are not copyrightable.  *See Reece v. Island Treasures Art Gallery, Inc.*, 468 F.Supp.2d 1197, 1207 (D. Haw. 2006) (a hula dancer's "kahiko dress" is an unprotectable "*scenes a faire*"); *Winfield Collection Ltd. v. Gemmy Indus. Corp.*, 311 F.Supp.2d 611, 616-17 (E.D. Mich. 2004) ("the pointed hat, the flowing cape, the curled boots, the dominant black color of the clothing, as well as the broom, are all elements that follow from [a] witch theme"); *Shame on You*, 2015 WL 4885221, at *30 ("a brightly colored dress, standing alone, is entirely generic and therefore not a copyrightable concept, especially not in a comedy").  Plaintiff's assertions that Lucious is friends with the president and Newt is friends with the mayor, or that both characters are "womanizers"—even if they were, in fact, similar—are far too common to be protectable.  *See, e.g.*, *Althouse v. Warner Bros. Entm't*, No. CV 13-00696, 2014 WL 2986939, at *3 (C.D. Cal. Apr. 28, 2014) (characters that have an enemy whom they hate and have nightmares of their significant other dying are standard elements common to film and literature).

### (ii)   Cookie Lyon and China Doll

Lucious's ex-wife, Cookie, and Plaintiff's wife, China Doll, are also wholly dissimilar.  While Plaintiff alleges that both characters are the mother of the leading character's children and go "to jail for dealing drugs to sacrifice for the good of [their] famil[ies] and to keep the patriarch out of jail," ECF 24, ¶ 20(d), China Doll does not even go to prison in the DVD, and in the Book she is incarcerated only for a short period of time, before she and Plaintiff are married or have children, and is released *before* Plaintiff.  In any event, that a character is the mother of her husband's children and goes to prison on drug charges is entirely generic and merely

*scenes a faire* of the premise of a couple involved in selling drugs.  *See Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1186 (C.D. Cal. 2001) ("To the extent that the two characters *are* similar, it is only with respect to traits that are so generalized and/or cliché as to be nearly *scenes a faire* of the military/action genre.").

Indeed, Cookie and China Doll are very distinct characters.  China Doll is a loyal wife who runs Plaintiff's pimping business while he is incarcerated and urges him to leave a life of crime out of fear for his safety.  She plays a peripheral role in Plaintiff's Works.  Cookie, by contrast, shares the spotlight with Lucious as a primary character in *Empire*.  A talented music producer and performer in her own right, Cookie is strong, charismatic, and independent, and battles Lucious for a share of the record company that she helped found.

Plaintiff again tries to salvage his claim by alleging that Cookie and China Doll "look[] identical" and wear similar costumes.  FAC, ¶ 20(6); *see e.g.*, *id.*, ¶ 20(7) (Cookie wears "'China Doll' style coat with fur collar" and "'China Doll' style hair").  Such random "similarities" in costume are, however, far too generic to be protectable.  *See Capcom Co., Ltd. v. MKR Grp., Inc.*, No. C 08-0904 RS, 2008 WL 4661479, at *8 (N.D. Cal. Oct. 20, 2008) (rejecting infringement claim based on "superficial, generic physical similarities of gender, hair color and wardrobe").

### (iii)   The Sons

Plaintiff also seeks unsuccessfully to draw parallels between his three (or four, *see* RJN, Ex. C) sons who form the Newtrons and Lucious's three sons.  The *only* similarity between the characters is that some are musicians, and even then there are differences:  the Newtrons are pre-teens and teenagers and performed as a group, while the sons in *Empire* are all adults, two are solo artists and the third is not a performer but a married businessman with an MBA.  Each of the three sons in *Empire* is a complex character with his own distinct characteristics:  one is gay, one is bipolar, and each has a dramatically different relationship with his father.  Plaintiff's Works, on the other hand, treat the Newtrons (however many) as a single

unit, except for Ron Newt Jr., whose only distinguishing characteristic is that he was shot in a convenience store robbery—an event that does not appear in *Empire*.

The only other alleged similarity between the sons is that the Newtrons performed in sunglasses and gold chains similar to those worn by Hakeem Lyon. ECF 24, ¶ 20(15).  As with the other costumes, these generic similarities are unprotectable *scenes a faire*, which flow directly from the characters being musical performers.  *See Reece*, 468 F.Supp.2d at 1207; *Capcom*, 2008 WL 4661479, at *8.

### (c)    Dialogue

Plaintiff alleges absolutely *no* similarities in the dialogue, which dooms his claim entirely.  *See Olson*, 855 F.2d at 1450 ("[E]xtended similarity of dialogue [is] needed to support a claim of substantial similarity.").

### (d)    Mood

Neither is there any merit to Plaintiff's claim that the works "have a similar mood in that they are dramas that promote the excesses of a 'pimp' lifestyle, sustain an undercurrent of violence that threatens to and periodically does erupt through the tension, and utilize hip hop music to enhance the drama and forward the action," ECF 24, ¶ 20(e).  While both works contain music, music is a central element of each *Empire* episode, which includes the performance of original contemporary songs interspersed throughout each episode, while very different music is performed in Plaintiff's Works only during the part of the story about the Newtrons, which is less than a third of the DVD, and even less of the Book.  Modeled after the Jackson 5, the Newtrons perform songs featuring boy-band harmonies and saccharine lyrics, accompanied by simplistic choreographed dance moves.  The music of *Empire's* artists are, in contrast, sophisticated hip hop and R&B songs.

More important, *Empire* is a polished nighttime soap opera that airs on primetime network television.  It has a vibrant, bright, and colorful tone, with little violence and an upbeat mood about a family's financial success.  Plaintiff's Works, on the other hand, are crudely written, dark, regretful, and violent memoirs detailing

the death of Plaintiff's teenaged son, acts of graphic violence and other criminal activity—the portrayal of which would likely warrant an NC-17 rating in film, and would not be permitted in network primetime.[5]  *See Campbell v. Walt Disney Co.*, 718 F.Supp.2d 1108, 1114 (N.D. Cal. 2010) (finding the moods of two works not substantially similar where one contained scenes involving drug dealers and the hero chopping off his own finger while the other had "'happy upbeat overtones'").

### (e)   Theme

While Plaintiff alleges that "[e]ach work has as a core theme of drama centering around the story of an African American man with a history of violence raising himself and his three-sons [sic] from the ghetto and a life of crime into the world of the music industry," ECF 24, ¶ 20(a), he mischaracterizes his own Works. The Newtrons never make it big, Plaintiff returns to crime, and his son is killed at age 16 in a convenience store robbery.[6]  Nor does Plaintiff accurately describe the theme of *Empire*, which is set long after the protagonist has exited a life of crime and becomes a successful entertainer and music mogul.

Moreover, the theme of a character raising himself up out of a life of poverty and crime to become successful is neither original nor protectable.  *See Cavalier*, 297 F.3d at 823 ("[f]amiliar stock scenes and themes that are staples of literature are not protected" and hence cannot serve as grounds for substantial similarity); *Willis v. Home Box Office*, No. 00 CIV 2500 (JSM), 2001 WL 1352916 at *2 (S.D.N.Y. Nov. 2, 2001) (rejecting claim of similarities based on "themes . . . common to the talent agency business, or to situation comedies in general or in trivial detail that are

---

[5] The DVD also contains nudity, including close-up images of female genitalia. RJN, Ex. C, 8:34-36.

[6] Indeed, Plaintiff himself identifies the theme of the Book as "you reap what you sow."  RJN, Ex. B at 1.  Similarly, the synopsis of the DVD states: "The past had come back to haunt him and when the game was over it would prove to cost him much more than he ever anticipated."  RJN, Ex. C.

1   not essential to either series"); *Benjamin*, 2007 WL 1655783, at *5 ("stock themes

2   'cannot raise a triable issue of fact on [a] plaintiff's copyright claim").

3       Regardless, because Plaintiff's Works are, by Plaintiff's admission, the

4   candid story of his life, *see* RJN Exs. B-C, even if there were similarity in the

5   themes of those Works and *Empire* (and there are not), there could be no

6   infringement, because the objective "facts" of Plaintiff's life are not copyrightable.

7   *See Satava*, 323 F.3d at 810.

8                   **(f)     Pace**

9       "The time period within which the movie is set is a factor for determining the

10  pace of the movie." *Campbell*, 718 F.Supp.2d at 1115.  Plaintiff's Works span from

11  the late 1940s through the early 2000s, in a single book or 80-minute DVD, while

12  *Empire* takes place in present day (with brief flashbacks to the 1980s), and unfolds

13  over a matter of months in twelve episodes totaling 531 minutes.  *See Capcom*, 2008

14  WL 4661479, at *10 (no substantial similarity in pace where one story takes place

15  over many months and the other takes place entirely over a three-day period).

16                  **(g)     Setting**

17      Although Plaintiff alleges that both works take place in a "large urban

18  setting," ECF 24, ¶ 20(c), "the mere fact that some portion of both works occurs in a

19  city" is 'generic and inconsequential.'"  *Shame on You*, 2015 WL 4885221, at *23

20  (*quoting Rice*, 330 F.3d at 1177).  Plaintiff also fails to allege that Works' tone is

21  similar—while Plaintiff claims that his Works and *Empire* "favor[] a lavish 'pimp'

22  aesthetic and contain[] flashbacks to the ghetto of a different era" *see id.*, ¶ 20(c),

23  *Empire* is set in the music world, while Plaintiff's work is set primarily in the world

24  of drug-dealing and prostitution.

25                       * * *

26      There are virtually no similarities between Plaintiff's Works and *Empire*, and

27  certainly no similarities of protectable expression.  No additional pleadings can

28  change that fact, and Plaintiff's infringement claim should therefore be dismissed

with prejudice and without leave to amend.  *See Zella*, 529 F.Supp.2d at 1130-31; *see also Campbell*, 718 F.Supp.2d at 1116 (denying leave to amend where works were not substantially similar as a matter of law).

### 2.     The Application to Register the DVD & Screenplay Is Invalid

Copyright registration is "a precondition to filing a claim," which "plaintiffs ordinarily must satisfy before filing an infringement claim."  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157-58 (2010); *see also* 17 U.S.C. § 411(a).  In the Ninth Circuit, a plaintiff can avoid dismissal by alleging facts showing "receipt by the Copyright Office of a complete application" for registration.  *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 621 (9th Cir. 2010).

While the Book appears to have been registered, *see* RJN, Ex. B, Plaintiff has failed to apply properly to register the Screenplay and DVD.  Plaintiff claims that Exhibit 1 to the FAC is "[a] true and correct copy of the application for copyright registration for the Screenplay *and* the DVD."  ECF 24, ¶ 12 (emphasis added).  That application states that it is for a work titled "All That Glitters is not Gold script of the book bigger than big," not the DVD.  *See id.*, Ex. 1 at 2.

Plaintiff's attempt to register two works in a single application is deficient and fails to satisfy Plaintiff's pleading obligation.  *See Cosmetic Ideas*, 606 F.3d at 621 (requiring a Plaintiff to allege a "complete application" for registration).  Multiple works may be registered in a single application only if they are "otherwise recognizable as self-contained works" that are "included in a single unit of publication."  *See* 37 C.F.R. § 202.3(b)(4)(i)(A); *Olander Enters., Inc. v. Spencer Gifts, LLC*, 812 F.Supp.2d 1070, 1076-77 (C.D. Cal. 2011) (citation omitted).  Plaintiff's copyright application makes clear that the Screenplay was published in 1998, *see id.*, Ex. 1 at 41, while the DVD, on its face, states that it was published in 2006.  *See* RJN, Ex. C.  Works published eight years apart cannot be a "single unit of publication," *see Olander Enters.*, 812 F.Supp.2d at 1076-77, and Plaintiff's apparent attempt to register the Screenplay and DVD together, *see* ECF 24, ¶ 12, is

1  thus invalid.[7]  Without a valid registration, Plaintiff's claim for infringement of the

2  Screenplay or DVD necessarily fails.  *See Reed Elsevier*, 559 U.S. at 166-67.

3  **B.    Plaintiff Cannot State a Claim for Breach of Implied Contract**

4  Courts will imply a contract for use of a plaintiff's idea where the plaintiff

5  "disclosed the work to the offeree for sale, and did so under circumstances from

6  which it could be concluded that the offeree voluntarily accepted the disclosure

7  knowing the conditions on which it was tendered and the reasonable value of the

8  work."  *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004)

9  (summarizing the holding in *Desny v. Wilder*, 46 Cal.2d 715 (1956)); *see also*

10  *Benay*, 607 F.3d at 629 (listing the elements of a so-called *Desny* claim).  Such a

11  contract will be implied only where the work was disclosed by the plaintiff for sale

12  "on the theory that the bargain is not for the idea itself, but for the *services* of

13  conveying that idea."  *Grosso*, 383 F.3d at 967 (citation omitted, emphasis added).

14  Plaintiff fails to allege that any Defendant other than Defendant Howard was a party

15  to the purported contract, and he fails to allege that *any* Defendant (including

16  Defendant Howard) used his Works in creating *Empire*.

17  **1.    Plaintiff Fails to Allege a Contract with Defendants Daniels,**

18  **Strong, and Spellman**

19  To state an implied contract claim, the plaintiff must disclose the work

20  directly to the defendant with whom the implied contract was allegedly formed.  *See*

21  *Benay*, 607 F.3d at 634 ("Privity between the parties is a necessary element of an

22  implied-in-fact contract claim.").  "[T]he creation of an implied-in-fact contract

23  between an author, on the one hand, and an agent, producer, or director, on the other

24  hand, is of such a personal nature that it is effective only between the contracting

25

26

27  [7] Footage in the DVD is purportedly from as late as 2004, indicating that the first

28  publication of the DVD could not have been in 1998.  RJN, Ex. C, 14:25.

1    parties." *Rokos v. Peck*, 182 Cal.App.3d 604, 617-18 (1986).[8]

2         Plaintiff bases his implied contract claim on an alleged meeting with

3    Defendant Howard in November 2010, when Plaintiff claims to have "extensively

4    discussed his life story" and provided Howard with copies of his Works.  ECF 24,

5    ¶ 30.  Plaintiff does not claim that any other Defendant was present at that meeting,

6    nor does he allege facts showing that Howard had the authority to bind any other

7    Defendants to this purported agreement.  Plaintiff relies instead on boilerplate

8    allegations of agency and alter ego between and among the Defendants, *id.*, ¶¶ 10-

9    11, which are insufficient as a matter of law.  *See Gerritsen v. Warner Bros. Entm't*

10   *Inc.*, ---F.Supp.3d---, No. CV 14-03305 MMM (CWx), 2015 WL 4069617, at *20

11   (C.D. Cal. Jan. 30, 2015) ("a plaintiff must allege sufficient facts supporting both of

12   the elements of alter ego liability"); *In re Toyota Motor Corp.*, 785 F.Supp.2d 883,

13   911 (C.D. Cal. 2011) (striking boilerplate agency allegations; plaintiff failed to

14   allege "something more than mere conclusory allegations of mutual and overlapping

15   agencies pursuant to which Defendants at all time[s] acted").

16        Because Plaintiff fails to allege that he disclosed his Works to Defendants

17   Daniels, Strong, or Spellman, he also fails to allege that these Defendants

18   voluntarily accepted the Works under circumstances implying an agreement.  *See*

19   *Desny*, 46 Cal.2d at 739 (an implied contract requires that the contracting party

20   _____

21   [8] Such direct contact is present in every case in which a plaintiff has been found to

22   have stated an implied contract claim.  *See, e.g., Desny*, 46 Cal.2d at 726-27
     (plaintiff conveyed his idea directly to the defendant's secretary whose "knowledge

23   would be his knowledge"); *Montz v. Pilgrim Film & Television, Inc.*, 649 F.3d 975,
     977 (9th Cir. 2011) (plaintiffs attended "[a] number of meetings and discussions"

24   with defendants during which the plaintiffs "presented screenplays, videos, and
     other materials relating to their proposed show"); *Benay*, 607 F.3d at 622-23, 629

25   (plaintiffs "pitched" their idea for a screenplay on a telephone call with defendants

26   and provided a copy directly to the defendants); *Firoozye v. Earthlink Network*, 153
     F.Supp.2d 1115, 1127 (N.D. Cal. 2001) (plaintiff emailed and communicated

27   directly with one of defendant's executives).

28

CALDWELL
LESLIE &
PROCTOR

-23-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

"voluntarily accept the disclosure, knowing the conditions on which it is tendered"). While Plaintiff alleges conclusorily that all "Defendants" "fully and clearly understood" his "expectation" that he "would be compensated for [the] use [of the Works]" ECF 24, ¶ 34, he fails to allege *how* Defendants Daniels, Strong, or Spellman, who were not at the alleged 2010 meeting, could have become bound by a "'bilateral expectation'" that Plaintiff's idea requires compensation. *See Quirk v. Sony Pictures Entm't Inc.*, No. C 11-3773 RS, 2013 WL 1345075, at *10 (N.D. Cal. Apr. 2, 2013) (citation omitted). Indeed, Plaintiff fails to allege facts showing that Defendants Daniels, Strong, or Spellman even *knew* of Plaintiff, his works, or his meeting with Howard. This lack of privity requires dismissal of the implied contract claim against Defendants Daniels, Strong, and Spellman.

### 2. Plaintiff Does Not and Cannot Allege Use

Plaintiff also fails entirely to allege that any Defendant *used* the Works, *see Benay*, 607 F.3d at 629, for at least two reasons:

#### (a) Plaintiff Fails to Allege Use by Defendants

Plaintiff does not allege use by Defendant Howard, the only Defendant to whom the Works allegedly were disclosed. *See Klekas*, 150 Cal.App.3d at 1114-15 (rejecting implied contract claim where "there is nothing in the record to establish the use of [the plaintiff's] work in the writing or making of" the works at issue). Plaintiff alleges only that Defendant Howard is an "actor" in *Empire, see* ECF 24, ¶ 4, not that he had any role in creating the series, and alleges no facts supporting alleged use by Defendants Strong, Daniels, or Spellman.

#### (b) The Ideas in the Works are Not Similar

To state a claim for breach of implied contract, a plaintiff must establish, at a minimum, substantial similarity between the ideas in the works at issue in order to raise an inference of use. *See Green v. Schwarzenegger*, No. CV 93-5893-WMB, 1995 WL 874191, at *12 (C.D. Cal. July 12, 1995), *aff'd*, 107 F.3d 877 (9th Cir. 1997).

CALDWELL
LESLIE &
PROCTOR

1    Plaintiff fails to identify specific similarities of the ideas embodied in his

2  Works and *Empire*.  *See Klekas*, 150 Cal.App.3d at 1112.  Indeed, as described in

3  Part IV.A.2, *supra*, Plaintiff's Works and *Empire* are, in fact, substantially

4  *dissimilar*, and any similarities between them consist of common ideas inherent in

5  stories about drug dealing, arrest, violence, music, and family.  None of these

6  purported "similarities" are in any way original to Plaintiff and none can support

7  Plaintiff's implied contract claim.  *See id.* at 1113 (rejecting the plaintiff's list of 23

8  similarities as "either strained or devoid of legal significance" where the works had,

9  at most, "certain similarities that necessarily flow from a common theme"); *Ware v.*

10 *Columbia Broad. Sys., Inc.*, 253 Cal.App.2d 489, 495 (1967) (finding that it would

11 have been "fatuous for plaintiff to have alleged that when his story was submitted

12 defendants agreed, by implication, to pay him if they ever in the future made a

13 picture embodying any stock situation which plaintiff had drawn upon in

14 constructing his play").  As the above comparison of the works demonstrates, the

15 works are not only substantially dissimilar in expression, but also in idea.

16       **C.      Leave to Amend Would Be Futile**

17    Because Plaintiff fails to state either of his claims, his FAC should be

18 dismissed in its entirety, and with prejudice, because nothing Plaintiff could allege

19 in an amended complaint could change the fact that *Empire* is not in any way similar

20 to Plaintiff's Work.  *See Campbell*, 718 F.Supp.2d at 1116 (denying leave to amend

21 where the works were not substantially similar); *Gadh*, 2014 WL 1778950, at *6

22 (dismissing with prejudice where works were not substantially similar).

23 **V.    CONCLUSION**

24    For the foregoing reasons, Defendants respectfully request that the Court

25 grant this Motion and dismiss the FAC with prejudice and without leave to amend.

26 DATED:  October 15, 2015          CALDWELL LESLIE & PROCTOR, PC

27                                   By  _____/s/_____

28                                        LINDA M. BURROW