1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON NEWT, an individual, | Case No. 15-cv-02778-CBM-JPRx |
| Plaintiff, | |
| vs. | **ORDER**<br>[32,33,34,45,60,69] |
| TWENTIETH CENTURY FOX FILM CORPORATION, et al., | |
| Defendants. | |

The matters before the Court are:  (1) Defendants Lee Daniels, Danny Strong, Terrence Howard, and Malcolm Spellman's (collectively, "Individual Defendants'") Motion to Dismiss First Amended Complaint with Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 32); (2) Defendant Fox Broadcasting Company's ("Fox's") Motion For Judgment on the Pleadings (Dkt. No. 33); (3) Defendants' Requests for Judicial Notice (Dkt. Nos. 34, 60); and (4) Plaintiff's Request for Judicial Notice (Dkt. No. 45).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The First Amended Complaint ("FAC") asserts two causes of action against the Individual Defendants and Fox (collectively, "Defendants"):  (1) Copyright Infringement, 17 U.S.C. §§ 101 *et seq.*; and (2) Breach of Implied-In-Fact

Contract.  Plaintiff's claims are based on Defendants' alleged infringement and use of Plaintiff's Book, Screenplay, and DVD (each entitled "Bigger Than Big") in connection with the television series *Empire*.

## II.   STATEMENT OF THE LAW

### A.   Motion To Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal of a complaint can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  On a motion to dismiss for failure to state a claim, courts accept as true all well-pleaded allegations of material fact and construes them in a light most favorable to the non-moving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A formulaic recitation of the elements of a cause of action will not suffice.  *Twombly*, 550 U.S. at 555. Labels and conclusions are insufficient to meet the Plaintiff's obligation to provide the grounds of his or her entitlement to relief.  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  If a complaint cannot be cured by additional factual allegations, dismissal without leave to amend is proper.  *Id.*

A court may consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice in ruling on a motion to dismiss.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Materials whose contents are alleged in the complaint may also be considered by the Court for purposes of a motion to

dismiss.  *In re Stac Elec. Sec. Litig.,* 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**B.      Motion For Judgment On the Pleadings**

A motion for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c) is "functionally identical" to a motion to dismiss for failure to state a claim under 12(b)(6).  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). For purposes of a motion for judgment on the pleadings, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citations omitted). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Id*. (citation omitted).

**C.      Copyright Infringement**

To establish a successful copyright infringement claim, a plaintiff must show:  (1) plaintiff's ownership of the copyright; (2) defendant's access to plaintiff's work; and (3) "substantial similarity" between the works.  *Berkic v. Crichton*, 761 F.2d 1289 (9th Cir. 1985).[1]

An extrinsic test and intrinsic test is used to determine whether the works are substantially similar.  *Funky Films, Inc. v. Time Warner Entm't Co., L.P.,* 462 F.3d 1072, 1077 (9th Cir. 2006).  Courts may apply the extrinsic test and determine that works are not substantially similar on a motion to dismiss and motion for judgment on the pleadings.  *White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 476-77 (9th Cir. 2014) (district court did not err in holding as a matter of law on a motion to dismiss that plaintiff's screenplay was not

---

[1] Registration of a work is also required prior to bringing an infringement action. 17 U.S.C. § 411(a); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 678 (9th Cir. 2014).

1  substantially similar to any of defendants' allegedly-infringing works) (citing

2  *Funky Films,* 462 F.3d at 1076-77).[2]  The extrinsic analysis is an objective test

3  which focuses on "articulable similarities between the plot, themes, dialogue,

4  mood, setting, pace, characters, and sequence of events" in the works.[3]  *Funky*

5  *Films*, 462 F.3d at 1081.  In applying the extrinsic test, the Court "compares, not

6  the basic plot ideas for stories, but the actual concrete elements that make up the

7  total sequence of events and the relationships between the major characters." *Id.*

8  (citations omitted).  "Familiar stock scenes and themes that are staples of literature

9  are not protected." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir.

10  2002).  Moreover, "[s]cenes-à-faire, or situations and incidents that flow

11  necessarily or naturally from a basic plot premise, cannot sustain a finding of

12  infringement." *Id.*  A court must therefore disregard non-protectable elements in

13  making its substantial similarity determination under the extrinsic test. *Id.* at 822-

14  23; *Shaw v. Lindheim,* 919 F.2d 1353, 1361 (9th Cir. 1990); *Berkic*, 761 F.2d at

15  1293-94.  A lack of extrinsic similarity is fatal to a plaintiff's copyright case as a

16  matter of law.  *White*, 572 F. App'x at 476-77 (citing *Funky Films*, 462 F.3d at

17  1081).

18  ### III.  DISCUSSION

19  **A.  Judicial Notice**

20      Defendants request that the Court take judicial notice of:  (1) the copyright

21  _____

22  [2] *See also Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1125, 1131 (C.D. Cal. 2007)
    ("[I]f after examining the works themselves, this Court determines that there is no

23  substantial similarity, then the plaintiff here can prove no facts in support of his
    claim which would entitle him to relief—the standard for dismissal under Rule

24  12(b)(6)."); *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1151-71

25  (C.D. Cal. 2015) (finding no substantial similarity as a matter of law for purposes
    of a motion to dismiss and motion for judgment on the pleadings).

26  [3] In contrast, the intrinsic test is a subjective comparison for the trier of fact which

27  focuses on "whether the ordinary, reasonable audience would find the works
    substantially similar in the total concept and feel of the works." *Cavalier*, 297

28  F.3d at 822 (internal quotations and citations omitted).

registration for Registration No. TX0008057247; (2) the deposit copy of the book entitled "Bigger Than Big," Reg. No. TX0008057247; (3) the DVD documentary entitled "Bigger Than Big:  A Documentary of a Gangsta Pimp Ron Newt"; (4) the DVD of Season One of Fox's television show *Empire*; and (5) the Screenplay entitled *Bigger Than Big*, bearing Bates Nos. NEWT00001-000227.  Plaintiff requests that the Court take judicial notice of the copyright registration for Registration No. PA0001968125/2016-01-07.

The Court grants the parties' requests for judicial notice.  *See* Fed. R. Evid. 201(b)(2); *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001) (taking judicial notice of copyright certificates), *aff'd*, 328 F.3d 1136 (9th Cir. 2003); *Campbell v. Walt Disney Co.*, 718 F.Supp.2d 1108, 1111 n.3 (N.D. Cal. 2010) (taking judicial notice of motion picture and screenplay for purposes of a motion to dismiss copyright infringement and related claims).[4]

**B.    Copyright Infringement**

The parties dispute whether there is substantial similarity between Plaintiff's Book/DVD/Screenplay and *Empire*.[5]  To determine whether there is

---

[4] Plaintiff contends that Defendants' Motions cannot be premised on extrinsic evidence without being converted to a motion for summary judgment.  The Court, however, may consider materials whose contents are alleged in or incorporated by reference to the complaint for purposes of a motion to dismiss and motion for judgment on the pleading.  *See Ritchie*, 342 F.3d at 908 ("A court may . . . consider . . . documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. . . .  Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."); *Thomas v. Walt Disney Co.*, 337 Fed. App'x. 694, 695 (9th Cir. 2009) (district court properly considered materials whose contents were alleged in the complaint in finding works were not substantially similar as a matter of law on a motion to dismiss).

[5] Defendants do not contest Plaintiff's ownership of the Book, Screenplay, and DVD, or that Defendants had access to Plaintiff's works.  Accordingly, the Court only analyzes whether Plaintiff's works and *Empire* are substantially similar.

substantial similarity among the works, the Court applies an extrinsic analysis of "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the works as follows[6]:

### 1. Plot

Although the parties' works each follow an African American man who was involved in drug dealing and has sons pursuing a music career, Plaintiff's works and *Empire* are not substantially similar as to plot.

Plaintiff's DVD is a "documentary" about the "true story of Ron Newt." 2/3 of the DVD centers on Newt's life as a "pimp" running a prostitution ring in San Francisco. The remainder of the DVD focuses on the Newtrons (a singing and dancing group comprised of Newt's pre-teen/teenaged sons) who obtain a record contract with Joe Jackson, Newt's friendship with the Jackson family, and the death of Newt's oldest son during a gang initiation robbery. Plaintiff's Book and Screenplay focus primarily on the violence, sex, drugs, and crime surrounding Ron Newt's (a.k.a. Prince Diamond's) life in San Francisco as a drug lord, West Coast mob boss, and prostitution ring leader, and his various imprisonments. The Book and Screenplay briefly portray how Newt gives up his life of crime to manage the Newtrons until the death of Newt's oldest son. Plaintiff's Screenplay also depicts the deterioration of Newt's finances and loss of power after he breaks up with a powerful gang leader to marry China Doll.

*Empire*, on the other hand, focuses on the power struggle amongst the Lyons—an African American family in the music business. *Empire* is premised on an African American man named Lucious Lyon who used music to survive the streets and poverty to become a famous rapper and music mogul. While *Empire* contains brief flashbacks to Lucious' struggled past (which included drug dealing), *Empire* focuses on family dynamics and conflict among Lucious' three

---

[6] *Funky Films,* 462 F.3d at 1081 (citations omitted).

adult sons competing to take over Lucious' music company because Lucious believes he is suffering from Amyotrophic Lateral Sclerosis ("ALS").  *Empire* also centers around the conflict between parents, ex-spouses, and siblings which arise after Lucious' ex-wife, Cookie Lyon, is released from prison, demands rights to the music company she started with Lucious, and tries to take over two of their sons' music careers.

While Plaintiff argues certain "similarities" in plot exist between the works, the following "similarities" identified by Plaintiff actually demonstrate the plots are not substantially similar:

(a)     Plaintiff contends that all the works follow an African American man whose wife went to jail instead of her husband for dealing drugs to save her family.  In *Empire*, Cookie (the ex-wife of the lead male character) serves 17 years in prison for a bad drug deal after she refuses to testify against her then husband Lucious.  The wife in Plaintiff's works, however, is never imprisoned instead of her husband for dealing drugs.  In Plaintiff's Book and Screenplay, Newt's wife goes to jail for a brief period of time in connection with Newt's gun possession—not drug dealing, and Plaintiff's DVD does not portray Newt's wife going to jail.[7]

(b)     Plaintiff argues that all the works portray three sons pursuing music careers who are being groomed for show business under the guidance of their father.  Plaintiff's works briefly cover the Newtrons, a singing and dancing group comprised of Newt's three pre-teen and teenaged sons who are managed by their father.  Although the Newtrons obtain record deals with the Jacksons and MCA Records in Plaintiff's work, their career is short-lived as a result of the death

---

[7] In Plaintiff's Book, Newt is told that his wife will "do twenty years" if he fails to turn himself in for possession of a firearm by a felon, but Newt's wife is soon bailed out of jail.  Similarly, in Plaintiff's Screenplay, Newt's wife takes the blame after Newt is arrested for possession of a handgun in order to prevent Newt from getting life in prison, but she is quickly bailed out of jail.

of Newt's oldest son.[8]  *Empire*, in contrast, focuses on two of Lucious' three adult sons' individual singing careers (the sons are not a dancing group), who are primarily managed by their father and/or mother, fight over taking over their father's music company, and each gain wide success in the music industry. Moreover, the basic plot idea of "pursuing dreams of music careers is not protectable." *Merrill v. Paramount Pictures Corp.*, 2005 WL 3955653, at *10 (C.D. Cal. Dec. 19, 2005).

   (c) Plaintiff contends that the works are similar because each "contains flashbacks to and is informed by the protagonists' history of violence and crime, and their struggle to maintain power in their world and legitimacy in the music industry."  Plaintiff's works all focus on Newt's life of crime as a "pimp" running a prostitution ring.  Plaintiff's Book and Screenplay also focus on Newt's life of crime as a mob leader and drug dealer.  Although Newt eventually tries to leave his life of crime to manage his sons' music group, the Newtrons' music career is not the focus of Plaintiff's works.  *Empire*, in contrast, features Lucious who is already a rich, successful rapper and music mogul, and only contains brief flashbacks of Lucious and Cookie's past life as small-time drug dealers.  Moreover, unlike Plaintiff's works, Lucious is not portrayed as a mob boss or prostitution ring leader.  Furthermore, plots ideas regarding characters struggling to succeed in the music industry is not protectable.  *Id.* ("[T]he basic plot idea of "pursuing dreams of music careers is not protectable.").

   (d) Plaintiff also contends the works are similar because they each involve an African American male lead character who entered a life of crime at age nine and has a troubled childhood.  In Plaintiff's Book and Screenplay, a west coast mob leader hands down his prostitution and drug business to Newt, whom he taught about the business since Newt was nine years old.  Newt is abused by his

---

[8] In Plaintiff's Screenplay, the Newtrons is initially comprised of Plaintiff's five children.

stepfather and is constantly serving time in juvenile hall or jail as a teenager in Plaintiff's works.  In contrast, in *Empire*, Lucious says he sold drugs when he was nine years old to feed himself and that music saved his life by preventing him from getting shot and helping him overcome poverty.  *Empire* contains periodic flashbacks of Lucious' childhood growing up with a mother with mental issues, but does not portray Lucious spending time in jail during his childhood, being involved in a prostitution ring, or being abused by a stepfather.  Moreover, the concept of characters with a troubled past is not protectable.  *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 844 (C.D. Cal. 2010) (characters not substantially similar even though "both start out as generally bad people"), *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011).

(e)     Plaintiff claims both his works and *Empire* are similar because the wife character is robbed, and four drug dealers and a close friend are killed by the protagonist.  In Plaintiff's Book and Screenplay, Newt kills two drug dealers and two drug addicts involved in robbing and raping his girlfriend while Newt is in jail.  In *Empire*, Lucious' ex-wife's purse is almost stolen after she finishes a drinking contest to keep a music artist under the family's music label, but Cookie is rescued by her security team (Cookie is not actually robbed or raped).  In Plaintiff's Book and Screenplay, Newt shoots his friend Fast Eddie, whom he says he loved like a brother.[9]  In *Empire*, Lucious shoots his ex-wife's cousin Bunkie after he says Lucious is a murderer for killing four drug dealers "back in the day" and tries to blackmail Lucious.

(f)     Plaintiff further argues the plots are similar because each work includes jail time for the male protagonist.  In Plaintiff's Book, Newt spends at least seven years in over 30 prisons based on crimes he commits as a mob boss, drug dealer and prostitution ring leader, including drug possession, possession of

---

[9] Plaintiff's DVD does not portray Newt's wife being robbed or Newt killing four drug dealers or a close friend.

firearms, and escaping prison.  In Plaintiff's Screenplay, Newt is told he will spend at least a year at a correctional facility (Terminal Island) after he is indicted for drug dealing, pimping, racketeering, and murder for hire, is sentenced to 4 years in Log Cabin Youth Authority as a teenager after he shoots his friend, and is set up by his friends, arrested by police, and told to "snitch" on his family.  In *Empire*, Lucious is arrested for murdering his ex-wife's cousin, Bunkie, but only one scene in the final episode of the first season of *Empire* features Lucious in jail.

(g)     Plaintiff also contends that the plots are similar because they all include an R&B diva appearing at a funeral.  In Plaintiff's Book, Newt fantasizes about Patti LaBelle attending (but not singing during) his son's funeral.  In Plaintiff's Screenplay, Patti LaBelle sings at his son's funeral.  No funeral is portrayed in Plaintiff's DVD.  In contrast, Gladys Knight actually sings at Bunkie's funeral (not Lucious' son's funeral) during an episode of *Empire*, after Bunkie is killed by Lucious.  *See Wild v. NBC Universal, Inc.* 788 F.Supp.2d 1083, 1101-02, 1104 (C.D. Cal. 2011) (plot line based on characters existing in the "real world" not substantially similar to plot line occurring in characters' dreams), *aff'd sub nom. Wild v. NBC Universal*, 513 F. App'x 640 (9th Cir. 2013).

(h)     Plaintiff further contends that the plots are similar because a "hit" is put on a character in all of the works.  In Plaintiff's Book and Screenplay, Newt puts out a contract to kill a rival mob leader named "Fats" who is gunned down in front of his house.  No "hit" is portrayed in Plaintiff's DVD.  In *Empire*, Cookie and her sister pay an old friend to kill a man whom Cookie believes is threatening her for testifying during grand jury proceedings, and the man is gunned down in his car at a stoplight.

(i)     Plaintiff also contends the plots are similar because the male protagonist goes to jail in all the works.  In Plaintiff's Book, Newt spends at least seven years in over 30 state and federal prisons for drug possession, fleeing police, possession of a firearm, escaping from prison, and as a result of his work as a mob

boss, drug dealer, and prostitution ring leader.  In Plaintiff's Screenplay, Newt: (1) spends one year in a correctional facility (Terminal Island), four years in Log Cabin Youth Authority as a teenager after he shoots his friend, and four years in jail for drug dealing in high school; (2) is put in the county jail mental ward after he is arrested at MCA records; (3) goes to jail again for possession of a gun; and (4) ends up serving a life sentence in federal prison.  In the final episode of season one of *Empire*, Lucious is arrested for murdering Cookie's cousin Bunkie and goes to prison.  Accordingly, the male characters in Plaintiff's works and *Empire* are imprisoned during different sequences and for different reasons.  *Gable*, 727 F. Supp. 2d at 844 (no substantial similarity in plot where many of the elements pointed out by plaintiff were not similar when viewed in context, and those that did "bear some commonality—e.g., . . . prison time. . . —[did] not occur in the same sequence").  Moreover, "[t]he concept of a bad person spending time in prison" is "unprotectable *scenes-a-faire.*"  *Id.* at 841.

          (j)    Plaintiff also argues that the plots are similar because the female lead is interrogated by police in all the works.  Contrary to Plaintiff's claims, China Doll is not interrogated by police in Plaintiff's works.  In Plaintiff's Book, the FBI searches China Doll's high school locker after arresting Newt, arrest China Doll for "conspiracy," and put her in the police car where they ask if Newt is her boyfriend but she is soon released.  In Plaintiff's Screenplay, China Doll (who is a teenager) is put in the police car after Newt is caught with a briefcase of drugs at school, and brought to the police station to be booked after the police ask her if Newt is her boyfriend.  Plaintiff's DVD does not depict China Doll being interrogated or arrested.  In *Empire*, Cookie (who is older and has three adult sons) is never interrogated by police, but rather approached by the FBI to testify against a former drug dealer as an extension of her deal to get out of prison,

and to testify against her ex-husband about killing her cousin Bunkie.[10]

(k)   Plaintiff further argues that the works all involve the male lead being broken out of jail by his sons.  Contrary to Plaintiff's claims, in Plaintiff's Book and Screenplay, Newt escapes from jail on his own—he is not broken out of jail by his sons.  Season one of *Empire* ends with Lucious' arrest for Bunkie's murder, and includes a scene of Lucious in prison, but does not portray Lucious' release.

(l)   Plaintiff also contends that the plots are similar because Newt is questioned by police "throughout" the Book and Screenplay and Lucious is "questioned by police" in *Empire*.  Although Newt is repeatedly questioned by police in Plaintiff's Book and Screenplay for various reasons, Lucious is questioned on only a few occasions by a detective about his ex-wife's cousin's murder (no cousin is murdered in Plaintiff's works).

(m)   Plaintiff also argues that the plots are similar because:  (1) one of Newt's sons puts a gun to his head in Plaintiff's DVD and the oldest son in *Empire* puts a gun to his own head; and (2) Newt's house is raided in Plaintiff's Book and Lucious' house is raided in *Empire*.  In *Empire*, Lucious' adult son contemplates committing suicide and puts a gun to his head in the music studio after his father votes against him becoming CEO of the family's music company.  In Plaintiff's works, there is no family music company and no context is given for why Newt's son puts a gun to his head in Plaintiff's DVD.  Moreover, in *Empire*, Lucious' house and office is raided by the FBI in connection with Cookie's cousin Bunkie's murder, whereas in Plaintiff's works, no raid takes place inside Newt's

---

[10] Moreover, plots are not substantially similar simply because the works involve questioning by police for different reasons.  *See Berkic,*761 F.2d at 1293 (plot not substantially similar where both works involve characters participating in an investigation, where one character's investigation is motivated by purely personal concerns concerning her best friend and other work involves an investigation by a police detective seeking to advance his career).

1   house and no cousin is murdered.  Moreover, these instances alone do not
2   establish substantial similarity between the plots in Plaintiff's works and *Empire*.
3   *See Gable*, 727 F. Supp. 2d at 844 (finding no substantial similarity in plot where
4   many of the elements pointed out by plaintiff were not similar when viewed in
5   context, and those that did "bear some commonality . . . [did] not occur in the
6   same sequence").

7        Therefore, the Court finds that there is no substantial similarity between
8   Plaintiff's works and *Empire* with respect to plot.

9        **2.      Themes**

10       Plaintiff argues that the themes are substantially similar because Plaintiff's
11  works and *Empire* focus on an African American with a history of violence raising
12  himself and his sons "from the ghetto and a life of crime into the world of the
13  music industry."  The concept of a bad person turning his life around, however, is
14  unprotectable.  *See Gable*, 727 F. Supp. 2d at 841 (storylines driven by the "basic
15  plot idea of turning one's life around," and "[t]he concept of a bad person
16  spending time in prison, and then trying to clean up their act by making restitution
17  and getting a job are unprotectable *scenes-a-faire*").

18       Furthermore, although Plaintiff's works and *Empire* focus on an African
19  American man who has sons in the music industry, the themes of the works are
20  different.  The theme of Plaintiff's works is "you reap what you sow," and "paying
21  the price" for a "corrupt" past through someone you love.  In Plaintiff's Book and
22  Screenplay, Newt is a rich and powerful mob boss, prostitution ring leader, and
23  drug lord who commits numerous crimes, murders, and acts of violence.
24  Plaintiff's DVD focuses primarily on Newt's lavish lifestyle as a "pimp."  In all of
25  Plaintiff's works, Newt's sons perform as a singing and dancing group whose
26  career is cut short when one of the sons is killed during a gang initiation.
27  *Empire*'s theme, on the other hand, focuses on the conflict and dynamics between
28  parents and their sons, brothers, ex-spouses, and others, who are battling for

control of a music company and trying to succeed in the music industry.
Moreover, unlike in Plaintiff's works, in *Empire* only two of the three sons are
singers with primarily solo careers, and neither the wife character nor any sons
die.[11]  Furthermore, although *Empire* includes some scenes of violence, violence is
not a central theme of *Empire*.  *See Bissoon-Dath v. Sony Comput. Entm't
America, Inc.*, 694 F. Supp. 2d 1071, 1083 (N.D. Cal. 2010) (although there were
themes of violence in both works, the video game had a "thematic centrality" of
violence, violence was scattered throughout the screenplay).

   Accordingly, the Court finds that the themes of Plaintiff's works and
*Empire* are not substantially similar.

### 3.   Dialogue

   "[E]xtended similarity of dialogue [is] needed to support a claim of
substantial similarity."  *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir.
1988).  Here, Plaintiff fails to identify any similarities in dialogue.[12]  Moreover,
the Court finds virtually no overlap in dialogue based on its review of the works.
Plaintiff's works contain predominantly graphic, violent, and sexual language, and
are replete with expletives, whereas *Empire*'s dialogue only includes occasional
expletives.  *See Gilbert v. New Line Prods., Inc.*, 2010 WL 5790628, at *8 (C.D.
Cal. Aug. 13, 2010) (dialogue not substantially similar where Plaintiff's
screenplay used expletives repeatedly whereas Defendants' screenplay was "void
of expletives").

   Accordingly, the Court finds that there is no substantial similarity among

---

[11] The FAC alleges that the DVD is a "documentary based on the Book," and that
the Book, Screenplay, and DVD "are based in large part on PLAINTIFF's life
story."  (FAC ¶ 12.)  To the extent Plaintiff's works are based on "objective 'facts'
and ideas" about his real life, those facts and ideas are not copyrightable.  *Satava
v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (citations omitted).

[12] While Plaintiff argues that a "non-exhaustive list" of similarities in dialogue is
alleged in paragraph 20 of the FAC, that paragraph and the remainder of the FAC
contain no reference to actual dialogue.

the works with respect to dialogue.  *See Cavalier*, 297 F.3d at 824-25 (finding no triable issue of fact on issue of whether parties' works were substantially similar under the extrinsic test where, *inter alia*, the works differed "markedly" in dialogue); *Gable,* 727 F. Supp. 2d at 847-48 (noting that "plaintiff must demonstrate 'extended similarity of dialogue" to support a claim of substantial similarity based on dialogue, and finding that no reasonable jury could conclude that works are substantially similar where, *inter alia*, there was no similar dialogue between works).

### 4.    Mood

The works are also not substantially similar as to mood.  Plaintiffs' works are dark, violent, and sexually graphic.  Although *Empire* contains some violent scenes, those scenes are not the primary focus of *Empire* and are less graphic than the violent scenes depicted in Plaintiff's works.  *See Bissoon-Dath*, 694 F. Supp. 2d at 1083 (moods of works not substantially similar where "dark and extremely violent" mood pervaded throughout plaintiffs' works and defendant's work only contained "some dark scenes"), *aff'd sub nom., Dath v. Sony Comput. Entm't Am., Inc.*, 653 F.3d 898 (9th Cir. 2011) (although "violence is not absent from plaintiffs' works, it lacks the thematic centrality and intensity seen in [defendant's work]").  There are also more upbeat scenes in *Empire*, such as the original songs performed in every episode.  *See Campbell*, 718 F. Supp. 2d at 1114 (moods of two works not substantially similar where one work contained scenes involving drug dealers and the hero chopping off his own finger while the other work had "happy upbeat overtones").

Accordingly, the Court finds that the moods of Plaintiff's works and *Empire* are not substantially similar.

### 5.    Setting

The settings between the works are not substantially similar because Plaintiff's works are primarily set in the prostitution, drug dealing and gang world,

whereas *Empire* is primarily set in the music world.

Contrary to Plaintiff's contention, the fact that Plaintiff's works and *Empire* mainly take place in a "large urban center" is inconsequential and does not make the works substantially similar.[13]  *See Shaw*, 919 F.2d at 1363 (fact that the works were both "set in large cities . . . do[es] not weigh heavily in our decision" on the issue of substantial similarity); *Shame on You Prods.*, 120 F. Supp. 3d at 1159 ("The mere fact that some portion of both works occurs in a city is 'generic and inconsequential, [and thus] fail[s] to meet substantial similarity.'") (quoting *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1177 (9th Cir. 2003)); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1071 (C.D. Cal. 2010) (settings of works were not substantially similar where both works were set in a suburban neighborhood).

Plaintiff contends that Plaintiff's works and *Empire* contain the following similarities in setting:  (1) Prince Diamond's Castle as pictured in Plaintiff's Book and Lucious Lyons' house in *Empire*; (2) the black gate in front of Newt's house shown in Plaintiff's DVD and the black gate in front of Lucious Lyon's house in *Empire*; (3) the storyboard in Plaintiff's Book and a scene in *Empire* of guns drawn at cars; (4) "flashbacks to the ghetto of a different era," scenes in nightclubs, and scenes in a jailhouse.  These settings are unprotectable *scenes-a-faire* which are too generic and common to be protectable.  *See Rosenfeld v. Twentieth Century Fox Film*, 2009 WL 212958, at *3 (C.D. Cal. Jan. 28, 2009) (finding settings in works were not similar "simply because they both include industrial factories, ultra modern offices, prominent clock towers, monorails, and other architectural features" because "such settings are *scenes a faire* naturally associated with a modern, industrial, urban environment"); *Bernal*, 788 F. Supp. 2d at 1071 (C.D. Cal. 2010) ("physical settings of both works consist of

---

[13] Plaintiff's Book and Screenplay predominantly take place in San Francisco, California, whereas *Empire* primarily takes place in New York City.

commonplace settings such as houses, front yards, offices, restaurants, interiors of cars, and so on" were generic and not so unusual or unique so as to be protectable).  Furthermore, these alleged similarities are "nothing more than 'random similarities scattered throughout the works' that are insufficient to support a claim of substantial similarity."  *Wild*, 513 F. App'x at 642.

Plaintiff also argues that the settings are similar because Hunter's Point, San Francisco, is referenced throughout Plaintiff's Book/Screenplay and Hunt's Point, New York, is referenced in *Empire*.  Those locations are located in different cities in different states.  Moreover, Hunt's Point is only mentioned once in *Empire* when Uncle Vernon tells Lucious that Cookie's cousin Bunkie owes a lot of money to someone who "runs everything from Hunt's Point all the way up to damn near New Rochelle."), whereas Hunter's Point is referenced numerous times throughout Plaintiff's Book and Screenplay, but is never referenced as a neighborhood controlled by someone whom a relative owes money to.  Accordingly, there are no protectable similarities between references to Hunter's Point and Hunt's Point in Plaintiff's works and *Empire*.

Plaintiff further contends that the settings are similar because they exhibit "a lavish 'pimp' aesthetic."  Plaintiff's Book portrays Newt's lavish lifestyle as a prostitution ring leader, drug lord and mob boss who loses all his money in the 1980s after he leaves his life of crime to manage his son's singing and dancing group, whereas *Empire* portrays Lucious' rich and lavish lifestyle as a successful singer and music company executive (not as a drug lord, gang boss or prostitution ring leader) who does not become poor while managing his sons' solo singing careers.

Plaintiff also argues the settings are similar because the works include scenes of a boardroom meeting in which Plaintiff's "China Doll" character and *Empire*'s "Cookie" appear in black lingerie.  Plaintiff's Screenplay, however, does not include the boardroom meeting scene.  Moreover, Cookie does not appear in

lingerie in a board meeting in *Empire*—she wears lingerie to a restaurant for a family dinner during which Lucious (her ex-husband) announces his engagement to his girlfriend Anika.

Accordingly, the Court finds that the settings in Plaintiff's works and *Empire* are not substantially similar.

### 6.   Pace

Plaintiff's Book is a 286 page novel and Plaintiff's Screenplay is a 230 page script for a movie, both of which begin with the events leading up to Newt's arrest and imprisonment, and then flash back through Newt's childhood and adulthood for the majority of the works.  Plaintiff's DVD is a single 80-minute long "documentary" which includes footage and dramatizations of Newt's life as a prostitution ring leader, and briefly covers Newt's friendship with the Jacksons and the Newtron's music career before Newt's oldest son is killed.  *Empire*, on the other hand, is a television series which spans over a time period of several months in twelve 1-hour long episodes, and takes place in present day with periodic flashbacks into the characters' past.  The Court therefore finds that Plaintiff's works and *Empire* are not substantially similar with respect to pace.[14]  *See Bernal*, 788 F. Supp. 2d at 1070 (works not substantially similar in pace where one work was paced as a feature film whereas the other work was paced as television series with multiple hour-long episodes); *Capcom Co., Ltd. v. MKR Grp., Inc.*, 2008 WL 4661479, at *10 (N.D. Cal. Oct. 20, 2008) (no substantial similarity in pace where one story takes place over many months and the other takes place entirely over a three-day period); *Weygand v. CBS Inc.*, 1997 WL 377980, at *8 (C.D. Cal. May 21, 1997) (pace not substantially similar where one work took place within approximately one year whereas the other work spanned over approximately twenty years).

---

[14] Plaintiff does not address this factor.

### 7.    Characters

The male lead characters in Plaintiff's works and *Empire* are not substantially similar.[15]  In Plaintiff's works, the male lead character Ron Newt is primarily portrayed as a pimp who runs a large prostitution ring and a mob boss. Both Plaintiff's Book and Screenplay portray Newt being abused by his stepfather as a child, burning down his mother/stepfather's home, dealing drugs in high school, expanding his drug and prostitution business when he becomes the leader of the west coast mob, marrying China Doll, failing in love with a gang leader named Vickie Von King, who has a massive international empire whose territory also covers San Francisco's Chinatown, leaving his life of crime and the drug/prostitution trade to manage his sons' singing and dancing group, struggling to help his sons' group make it in the music industry, and ending up poor.  In contrast, *Empire*'s male lead character Lucious is already a successful and famous musician who previously dealt drugs to survive (he was not a prostitution ring leader or mob boss).  *See Merrill*, 2005 WL 3955653, at \*10 (work which ends with a character's performance at an audition and only hints at her future success as a singer was not substantially similar to other work which described a character whose "high-flying music career" made up a substantial portion of the story).

---

[15] Alleged "similarities" identified by Plaintiff such as both male leads being womanizers, entertainers, song writers, producers in the music business, having an enemy who is a record executive, are too generic and common to be protectable. *See Hayes v. Minaj*, 2013 WL 11328453, at \*7 (C.D. Cal. Mar. 7, 2013) (unfaithful male partners in the hip hop industry not protectable expression); *Rice*, 330 F.3d at 1176 ("[W]hile there may exist similarities between the magician 'characters,' any shared attributes of appearance and mysterious demeanor are generic and common"); *Benjamin v. Walt Disney Co.,* 2007 WL 1655783, at \*6 (C.D. Cal. June 5, 2007) ("While Plaintiff contends both are attractive, likable, 30–year–old females that have escaped their humble past to pursue their dreams of working and living in the big city, these similarities are immaterial because they describe the female lead in almost every romantic comedy. Such stock characters are not protected by copyright law").

Moreover, Lucious is raised by his mother (not by an abusive stepfather), becomes a rich and famous rapper with numerous record-breaking songs (Newt does not have his own music career), creates his own music company, owns his own record label, and manages two of his sons' solo singing careers in addition to numerous other singers (Newt does not own a music company, is not a music executive, and only manages his sons' singing/dancing group in Plaintiff's works).  For the majority of the first season in *Empire*, Lucious believes that he is suffering from ALS, whereas Plaintiff's works do not portray Newt as suffering from ALS or any serious health conditions.

Plaintiff contends that the male lead characters are similar because Newt is in his 40s in Plaintiff's Screenplay and *Empire*'s Lucious is played by Terrence Howard who appears to be in his 40s.[16]  Similarity in age, however, is not protectable and does not demonstrate that characters are substantially similar for purposes of copyright protection.  *See Shame on You Prods.*, 120 F. Supp. 3d at 1164 ("a pretty blonde in her thirties is not a character that can be copyrighted"); *Benjamin*, 2007 WL 1655783, at *6 (characters who are "attractive, likable, 30-year-old females" who "escaped their humble past to pursue their dreams of

---

[16] Plaintiff also argues that the names of the male lead characters ("Lucious Lyon" and "Prince Diamond") are similar.  Similar sounding names, without more, do not support a finding of substantial similarity.  *See Bernal*, 788 F. Supp. 2d at 1070 (noting that "[a]lthough the women have similar sounding names (Suzanne and Susan), the characters do not have much in common" and finding the female characters were not substantially similar).  Plaintiff also contends that the male lead characters are similar because Newt is a furrier who is friends with the mayor in Plaintiff's works, and Lucious has a clothing line and is friends with the President in *Empire*.  Although Newt is involved in the fur business in Plaintiff's Book (Newt is not portrayed as a furrier in Plaintiff's Screenplay or DVD), Lucious is not a furrier in *Empire*—Lucious has a clothing line for which he is told he needs to approve jacket designs.  Furthermore, while Lucious references doing favors for President Obama in *Empire*, Newt is never friends with the mayor in Plaintiff's works.  Moreover, a friendship with an unnamed mayor vs. the President is substantially different.

working and living in the big city" are not protectable under copyright law).[17]

The main female characters in the works are also not substantially similar. The main female character in Plaintiff's Book and Screenplay is China Doll, a singer and dancer who meets Newt in high school, marries Newt, is not involved in managing the Newtrons after Newt leaves his life of crime to manage their sons' music group, and stays married to Newt until she ultimately dies. In *Empire*, the main female character Cookie is a talented music producer who serves 17 years in prison for taking the blame for her then husband in connection with a drug deal "gone bad" while Lucious raises their three sons into grown adults,[18] gets divorced from Lucious while she is in prison, fights with Lucious over his music company once she is released from prison, competes against Lucious to manage their two sons' and other artists' careers, and is still alive.

The only similarity as to the son characters is that some sons are singers. In Plaintiff's works, Newt's three sons are featured in less than 1/3 of the DVD and

---

[17] *See also Quaglia v. Bravo Networks*, 2006 WL 721545, at *3 (D. Mass. Mar. 21, 2006) (fact works both have characters of similar age, race, gender, appearance, and "bright," "ditzy," "girl-next-door manner," are "generalized character types" that "simply are not copyrightable"), *aff'd*, 2006 WL 3691667 (1st Cir. Dec. 15, 2006); *Eaton v. Nat'l Broad. Co.*, 972 F. Supp. 1019, 1029 (E.D. Va. 1997) (finding no meaningful or substantial similarities between the two works even though both works included two female mechanics, two young boys, and two garage owners, reasoning that basic human traits that certain characters share, including age, sex, and occupation "are too general or too common to deserve copyright protection"), *aff'd sub nom. Eaton v. Nat'l Broad. Co.*, 145 F.3d 1324 (4th Cir. 1998).

[18] The female character in Plaintiff's works never serves a long prison sentence nor serves a sentence for taking the blame for a drug deal involving her husband. In Plaintiff's Book, Newt is told that his wife will "do twenty years" if he fails to turn himself in for possession of a firearm by a felon, but Newt's wife is soon bailed out of jail. Similarly, in Plaintiff's Screenplay, Newt's wife takes the blame after Newt is arrested for possession of a handgun in order to prevent Newt from getting life in prison, but she is quickly bailed out of jail. The wife character in Plaintiff's DVD does not go to prison.

even less in Plaintiff's Book and Screenplay, and are portrayed as pre-teens and teenagers who performed as a singing and choreographed dance group called the Newtrons, befriend the Jackson family, and get a record deal with the Jacksons and MCA records, but whose fame is cut short when Newt's oldest son is shot during a gang initiation.  In contrast, *Empire* features three son characters who are adults, two of whom are solo artists launching their music careers (one son is a rapper and another son is a gay hip-hop/R&B singer), and one of whom is a married businessman (he is not a singer).  Unlike in Plaintiff's works, the sons in *Empire* are major characters who appear in every episode, do not perform together as a choreographed singing and dancing group, are not friends with the Jacksons, achieve successful individual music careers, and are all alive.[19]  *See Bernal*, 788 F. Supp. 2d at 1070 (finding no substantial similarity in characters where one is clearly the main character and the other is "one of four main characters that are central to the progression of the series"); *Merrill*, 2005 WL 3955653, at *10 (characters with varying success in the music industry not substantially similar).

    With respect to Plaintiff's remaining arguments regarding similarity between characters, the alleged "similarities" in style and dress (e.g., jackets, coats, hats, dresses, hair styles, eyewear, and jewelry) are too common and generic, and constitute *scenes-a-faire* that flow directly from characters in the music industry.  *See Capcom U.S.A., Inc. v. Data E. Corp.,* 1994 WL 1751482, at *15 (N.D. Cal. Mar. 16, 1994) (noting that similarities between characters "stem from the fact that both fighters are Thai kickboxers clad in traditional kickboxer

---

[19] The fact that the sons in the works wear sunglasses and gold chains is not protectable because those accessories are commonly worn in the music industry, and are therefore not protectable.  *See Kouf*, 16 F.3d at 1046 ("genius kid with thick-rimmed glasses" is "not distinctive enough to be a protectable character, and resembles the film character only in general, not in detail"); *Olson,* 855 F.2d at 1452-53 (characters that embody little more than an unprotected idea are not protectable).

attire—striped boxer shorts and wrist wrappings" and finding that Plaintiff could not "obtain copyright protection for the unoriginal portrayal of a stereotyped character"); *Shame on You Prods. Inc. v. Banks*, 120 F.Supp.3d at 1168 (any similarities of "a brightly colored dress, standing alone, is entirely generic and therefore not a copyrightable concept").  Likewise, any alleged similarities between the works with respect to shirtless inmates (assuming shirtless inmate characters actually appear in a Season 2 episode of *Empire*), are also too common and generic to be protectable.  As to images of characters posing with a large cat in Plaintiff's works and *Empire*, those "random similarities" do not establish substantial similarity.  *Rappoport v. Ovitz*, 242 F.3d 383 (9th Cir. 2000); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

Accordingly, the Court finds no substantial similarity between the characters in Plaintiff's works and *Empire*.

**8.    Sequence of Events**

The sequence of events between the works is not substantially similar. Plaintiff's Book and Screenplay begin with the events leading up to Newt's arrest, indictment, and imprisonment (Terminal Island).  While in prison, Newt sees television coverage of the death of his son during a store shooting.  Plaintiff's Book and Screenplay then flash back to Newt's childhood during which he was abused, had run-ins with the law, and served time in juvenile hall, then move to Newt's teenage years during which he becomes a rich drug dealer and prostitution ring leader, and meets his future wife.  Newt later becomes a mob boss, but ultimately gives up his life as a mob leader, drug lord, and "pimp" to manage his sons' music group.  Newt then befriends the Jacksons, obtains record deals for the Newtrons, and goes back to prison.  Plaintiff's Book and Screenplay both end with the death of Newt's oldest son.

Plaintiff's DVD begins with footage from his lavish lifestyle as a pimp, moves to Newt falling in love, getting married and having children, proceeds to

the beginning of the Newtron's music career as a singing and dancing group, the Newtrons' record deal, Newt getting arrested after he threatens an MCA records executive, and ends with Newt's son's death during a gang initiation while Newt is in prison.

In contrast, *Empire* begins with Lucious as a middle-aged adult with three adult sons, who is a rich and famous singer with a music company on the verge of becoming a publicly traded company. Lucious' ex-wife is released from prison. Two of Lucious' adult sons then release their first music albums and Lucious' music company eventually becomes public. Season one ends with Lucious going to prison after he is charged with the murder of his ex-wife's cousin. While *Empire* is set in present day with brief flashbacks to the characters' past, Plaintiff's Book and Screenplay include one long flashback after Newt, who is in prison, sees a video of his son being shot and killed by a convenience store owner.

Accordingly, there is no substantial similarity in sequence of events. *See Gable*, 727 F. Supp. 2d at 844 (no substantial similarity in plot where many of the elements pointed out by plaintiff were not similar when viewed in context, and those that did "bear some commonality—e.g., lottery winnings, prison time, paying off debts—[did] not occur in the same sequence"); *Cavalier*, 297 F.3d at 823 (sequence of events were not substantially similar where events appeared in different contexts in the works, and works did not "share any detailed sequence of events"); *Bernal*, 788 F. Supp. 2d at 1072 (sequence of events were not substantially similar where similar scenes in the works did not occur in the same order).

*      *      *

Plaintiff has demonstrated, at most, random similarities between the works which does not constitute substantial similarity. *See Rappoport v. Ovitz*, 242 F.3d 383 (9th Cir. 2000) ("Because Rappoport demonstrated only random similarities, there is no substantial similarity between the works."); *Kouf*, 16 F.3d at 1045

("[W]e are equally unimpressed by Kouf's compilation of random similarities scattered throughout the works.") (internal quotations omitted); *Zella*, 529 F. Supp. 2d at 1137 (no substantial similar where plaintiff "cobbled together" a list of generic elements that did not form a specific pattern); *Flynn v. Surnow,* 2003 WL 23411877, at *9 (C.D. Cal. Dec. 9, 2003) (similarities cited by Plaintiff were "randomly scattered throughout the works and ha[d] no concrete pattern . . . in common").[20]   Weighing the factors, the Court therefore finds that Plaintiff's Book, DVD, and Screenplay are not substantially similar to *Empire* as a matter of law.[21]

## C.      Implied-In-Fact Contract Claim

Plaintiff's Second Cause of Action is a state law claim for breach of implied-in-fact contract.  "[T]he analysis of similarity under an implied-in-fact contract claim is different from the analysis of a copyright claim."  *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 632 (9th Cir. 2010).  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's contract claim and dismisses it without prejudice to being refiled in state court.  *See Shame on You Prods.,* 120 F. Supp. 3d at 1171-72 (finding federal copyright claim failed as a

---

[20] Plaintiff argues that he has been precluded from conducting any discovery on the issue of access, and that the inverse-ratio rule requires denial of the Motions as to the copyright claim because Defendants have not contested access to Plaintiff's works.  Under the inverse-ratio rule, a lower standard of proof of substantial similarity is required when a high degree of access is shown.  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).  Here, Plaintiff "would not be able to demonstrate unlawful copying even under a relaxed version of the substantial-similarity test."  *Funky Films*, 462 F.3d at 1081 (affirming district court's denial of request for additional discovery on the issue of access so that appellants could satisfy the lower burden of proof under the inverse-ratio rule where there was no substantial similarity between the works).

[21] Defendants do not dispute that Plaintiff's Book and DVD have been registered with the U.S. Copyright office.  The parties dispute, however, whether Plaintiff's Screenplay has been registered.  Having found that Plaintiff's Book, DVD, and Screenplay are not substantially similar to *Empire* as a matter of law, the Court does not reach the issue of whether Plaintiff's Screenplay has been registered.

matter of law, but declining to exercise supplemental jurisdiction over the implied-in-fact contract claim upon noting that the federal copyright claim is based on "a different legal standard" and "principles of comity council strongly against maintaining the implied-in-fact contract claim").

## IV.   CONCLUSION

The Court:

(1)   **GRANTS** Defendants' Requests for Judicial Notice;

(2)   **GRANTS** Plaintiff's Request for Judicial Notice;

(3)   **GRANTS** the Individual Defendants' Motion to Dismiss the FAC as to the First Cause of Action for Copyright Infringement;

(4)   **GRANTS** Defendant Fox's Motion for Judgment on the Pleadings as to the First Cause of Action for Copyright Infringement; and

(5)   **DISMISSES** the Second Cause of Action for Breach of Implied-In-Fact Contract without prejudice to Plaintiff refiling in state court.

**IT IS SO ORDERED.**

DATED:  July 27, 2016.

_____

HON. CONSUELO MARSHALL
United States District Judge